**GEORGE DAY CONSTRUCTION CO., INC., Petitioner/Appellant,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL 354, Respondent/Appellee.**

**No. 83–1512.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1983.

Decided Jan. 4, 1984.

Karen E. Ford, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for petitioner-appellant.

David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for respondent-appellee.

Before WALLACE, TANG and NELSON, Circuit Judges.

TANG, Circuit Judge:

This appeal involves the validity of an arbitration award. The employer asserts that because the dispute arose after the expiration of the collective bargaining agreement the duty to arbitrate terminated with the agreement. The employer also contends that the subcontracting obligation did not survive the contract and that neither the arbitrator nor the district court had jurisdiction to determine this question. Finally the employer maintains that the arbitrator's conclusion contradicts the express terms of the contract. We conclude that the district court did not err in confirming the award. We affirm.

I

Between June 16, 1977, and June 16, 1980, the United Brotherhood of Carpenters and Joiners of America, Local 354 [the union] and the George Day Construction Co., Inc. [the employer] were parties to a collective bargaining agreement between the union and a multi-employer construction industry bargaining unit. In March and April 1980, the employer sought to withdraw from the multi-employer bargaining unit, and indicated its intention to cancel the collective bargaining agreement at its termination in June. The contract expired on June 16, 1980. The union and employer bargained over a possible new contract between June 1980 and August 26, 1980. They reached impasse on August 26, 1980.

After the contract expired but before impasse, the union filed a grievance on August 19, 1980. The grievance stated that before impasse the employer had commenced two construction projects and was using nonunion subcontractors on both jobs in violation of section 50 of the collective bargaining agreement.[1]

Both parties participated in the arbitration. The employer appeared and contested the arbitrator's authority. The union responded that the grievance was arbitrable. The parties also argued the merits of the dispute and, without reservation, submitted the matter to the arbitrator for decision.

The arbitrator ruled that the issue was arbitrable, i.e., that he had jurisdiction over the case, even though the events took place subsequent to the expiration of the contract. He ruled that the employer had violated section 50 of the collective bargaining agreement, and ordered backpay for those union employees who should have been employed on those projects. He also ordered the employer to refrain from violating section 50 in the future.

The employer subsequently brought suit under section 301 of the Labor Management Relations Act [the Act], 29 U.S.C. § 185, to vacate the award. Both parties filed motions for summary judgment. The district court denied the employer's motion, granted the union's and confirmed the award.

II

The employer questions first the arbitrator's assumption of jurisdiction. The arbitrator ruled that the parties' duty to arbitrate survived the expiration of the contract even though the dispute arose after the expiration of the collective bargaining agreement. The district court held that the arbitrator's ruling was entitled to deference. We agree.

It is a settled principle of labor law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). It is equally settled that, in the usual case, the court is charged with the duty of deciding the issue of arbitrability. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964); *Francesco's B., Inc. v. Hotel & Restaurant Employees & Bartenders Union, Local 28,* 659 F.2d 1383, 1387 (9th Cir.1981). However, because an arbitrator's jurisdiction is rooted in the agreement of the parties, *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir.1964), the parties may agree to submit even the question of arbi-

---

1. Pertinent portions of Section 50 are set forth in the Appendix.

trability to the arbitrator for decision. *United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7; *International Brotherhood of Teamsters, Local 117 v. Washington Employers, Inc.,* 557 F.2d 1345, 1349 (9th Cir.1977).

An agreement to allow the arbitrator to decide the question of arbitrability may be acted upon by the arbitrator even though it is collateral to the collective bargaining agreement containing the arbitration clause. *See Syufy Enterprises v. Northern California State Assn. of IATSE Locals,* 631 F.2d 124, 125 (9th Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981). Moreover, consent to grant the arbitrator such authority may be implied from the conduct of the parties in the arbitration setting. *See, e.g. International Brotherhood of Teamsters, Local 117 v. Washington Employers, Inc.,* 557 F.2d at 1350; *Ficek v. Southern Pacific Co.,* 338 F.2d at 656–57.

In *Washington Employers,* the parties called upon the arbitrator to decide whether the employer's failure to pay bargained for wage increases was willful within the meaning of a state statute entitling employees to double damages for such violations. The employer refused to arbitrate the question and the union brought suit to compel arbitration. Prior to a judicial ruling, the employer agreed to arbitrate the dispute. The arbitrator ruled adversely to the employer and the employer sought reconsideration by arguing that the arbitrator had exceeded his jurisdiction by basing his decision on state law which was preempted by federal law. The arbitrator denied the motion for reconsideration. The union brought suit in district court to enforce the award. The district court refused to enforce the award holding, in part, that the applicable state laws were preempted. On appeal, this court reversed, holding that the employer's conduct evinced an intent to allow the arbitrator to decide the merits. 557 F.2d at 1349–50. We noted that the employer could have preserved the jurisdictional question for judicial determination by making an appropriate reservation in conjunction with the stipulation to arbitrate. *Id.* at 1350. But failing to do so the em-

ployer waived the right to an independent judicial examination of the question of arbitrability.

Similarly, in *Ficek, supra,* we observed that the employer's submission of the merits of the dispute to arbitration without reserving the question of arbitrability constituted an implied consent to allow the arbitrator to determine the controversy. 338 F.2d at 656. We reasoned that "[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act." *Id.* at 657.

In the instant action the employer, by conduct evinced clearly its intent to allow the arbitrator to decide not only the merits of the dispute but also the question of arbitrability. The merits of the dispute along with the question of jurisdiction were fully addressed by the parties during the arbitration proceeding and, at its conclusion, the entire controversy was submitted to the arbitrator for decision. Nowhere in the record is there any indication that the employer reserved the question of arbitrability for initial determination in a judicial forum. Under these circumstances, we conclude that the employer impliedly consented to the arbitrator's deciding both the question of arbitrability and the merits of the controversy. The employer, by its conduct, clearly demonstrated this purpose.

Had the employer objected to the arbitrator's authority, refused to argue the arbitrability issue before him, and proceeded to the merits of the grievance, then, clearly the arbitrability question would have been preserved for independent judicial scrutiny. The same result could be achieved by making an objection as to jurisdiction and an express reservation of the question on the record. However, where, as here, the objection is raised, the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability.

As the employer points out, in the usual case, an employer who objects to arbitration on jurisdictional grounds may refuse to arbitrate the case. The union is then put to the task of petitioning the court to compel arbitration under section 301 of the Act. In such cases the question of substantive arbitrability comes before the court in the first instance.

■ The employer states, however, that the collective bargaining agreement applicable to this action contained a provision allowing a default award in the event a party fails to participate in an arbitration. It complains that it would be unfair to hold that the employer waived its right to an independent judicial evaluation of the arbitrability question under these circumstances.

We find no unfairness in this result. First, the employer agreed to the default provision in the collective bargaining agreement. The employer cannot be heard to complain on fairness grounds about ramifications arising out of a contractual provision to which it knowingly assented.

Second, the employer could have avoided the problem by simply not giving the arbitrability question to the arbitrator for decision. The employer merely had to voice its objection on the arbitrability issue and state on the record that it was reserving that question for later judicial determination. In this way, the question could be preserved for an independent judicial scrutiny at any subsequent proceeding for vacatur or enforcement.

Third, the employer could have taken the initiative by seeking declaratory and injunctive relief prior to the commencement of arbitration. *Cf. W.R. Grace & Co. v. Local 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers,* —— U.S. ——, ——, 103 S.Ct. 2177, 2180, 76 L.Ed.2d 298 (1983); *O'Connor Co. v. Carpenters Local Union No. 1408,* 702 F.2d 824, 825 (9th Cir.1983). Had any of these steps been taken the employer could have obtained an independent judicial examination of the question of arbitrability.

The inquiry does not end here, however. As we have stated, had the employer first pursued the question of arbitrability in a judicial forum, the issue would have been independently examined by the court. As the district court correctly perceived, however, because the employer initially submitted the arbitrability question to the arbitrator, any subsequent judicial review was narrowly circumscribed.

This circuit has previously delineated the applicable standard of review where an arbitrator rather than the court has made the initial determination of the question of arbitrability. In *Francesco's B., Inc. v. Hotel & Restaurant Employees & Bartenders Union, Local 28,* 659 F.2d 1383 (9th Cir.1981) a suit was brought to compel arbitration. Although a dispute had arisen concerning the scope of the duty to arbitrate the district court declined to rule on the question and instead ordered the parties to submit the arbitrability issue to the arbitrator. No appeal was taken as to this ruling. The arbitrator concluded that the dispute was arbitrable and ruled against the union on the merits. The union appealed from the district court's subsequent confirmation of the award. This court was called upon to review whether the arbitrator decided his own jurisdiction correctly and whether he decided the merits of the dispute correctly. We held that because the first ruling to compel arbitration was final and appealable when made, and because no timely appeal was taken to that order, we were not at liberty to review it de novo. *Id.* at 1388. Thus, we were faced with reviewing the decision of the arbitrator, as to both the merits and the question of arbitrability, as if he had had the authority to render both determinations. We held that the same standard of deference then applied on review of both questions. *Id.*

■ Thus, where the question of arbitrability is decided by the arbitrator, we are not at liberty to substitute our own view in place of the arbitrator's regardless what our view might be of the correctness of the arbitral decision. *W.R. Grace & Co.,* —— U.S. at ——, 103 S.Ct. at 2182. The parties have delegated that decision to the arbitra-

tor and we may not "second-guess" him. *Id.*

Where the decision involves contractual interpretation, we must defer as to any decision which draws its essence from the agreement. *Id.; United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Therefore, if on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union*, 412 F.2d 899, 903 (9th Cir.1969). This remains so even if the basis for the decision is ambiguous, *W.R. Grace & Co.*, —— U.S. at ——, 103 S.Ct. at 2182; *Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361, and notwithstanding the erroneousness of any factual findings or legal conclusions, absent a manifest disregard of the law. *American Postal Workers v. U.S. Postal Service*, 682 F.2d 1280, 1284 (9th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

Moreover, this deferential standard of review applies when the parties have submitted legal questions to the arbitrator "even if the question is one that is ordinarily for the courts to decide". *Broadway Cab Cooperative, Inc. v. Teamsters & Chauffeurs Local 281*, 710 F.2d 1379 at 1382 (9th Cir.1983). We will defer to such legal conclusions and interpretations even though the arbitrator has misinterpreted the law. *Id.; American Postal Workers*, 682 F.2d at 1285.

However, we are not bound to defer to an award which actually violates the law or any explicit, well defined and dominant public policy. *W.R. Grace & Co.*, —— U.S. at ——, 103 S.Ct. at 2182; *Broadway Cab Cooperative*, at 1382–83; *Cf. Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77–83, 102 S.Ct. 851, 855–859, 70 L.Ed.2d 833 (1982). Moreover, where the arbitrator contradicts an explicit mandate of the Supreme Court and applies a legal standard which is contrary to law and public policy, deference to his decision is unwarranted. *Broadway Cab Cooperative*, at 1383–84. We review

the arbitrability decision, as did the district court, under this narrow standard.

The arbitrator ruled that the grievance and arbitration provision survived the expiration of the collective bargaining agreement where the union had not waived its right to bargain and impasse had not been reached. This conclusion was based on his interpretation of the Supreme Court's opinion in *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). He relied particularly on the following pronouncement: "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Id.* at 253, 97 S.Ct. at 1073.

The arbitrator found that the union had not waived its right to bargain and that the grievance arose prior to impasse. He observed also that the employer did not argue that the dispute was not covered by the pre-existing contract. The arbitrator apparently found nothing in the contract to contradict the presumed intent that the duty to arbitrate would continue beyond termination of the contract. On this basis, he concluded that the dispute was arbitrable. The district court deferred to this interpretation.

The employer argues that the arbitrator erred in his interpretation of *Nolde Brothers*. In *Nolde Brothers* the applicable collective bargaining agreement provided for severance pay on termination of certain employees. Following termination of the collective bargaining agreement, the employer ceased plant operations and laid off its employees. The employer refused to pay severance benefits to the discharged employees. It also refused to arbitrate the severance pay issue on the ground that the contractual obligation to arbitrate terminated with the collective bargaining agreement. The Supreme Court held that the severance pay dispute was arbitrable. The court reasoned:

even though the parties could have so provided, there is nothing in the arbitra-

tion clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination. The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract. Any other holding would permit the employer to cut off all arbitration of severance-pay claims by terminating an existing contract simultaneously with closing business operations.

By their contract the parties clearly expressed their preference for an arbitral, rather than a judicial-interpretation of their obligations under the collective-bargaining agreement....

. . . .

The parties must be deemed to have been conscious of [the federal policy favoring arbitration] when they agree [sic] to resolve their contractual differences through arbitration. Consequently, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

*Id.* at 252–55, 97 S.Ct. at 1072–74.

The employer argues that under *Nolde Brothers* the duty to arbitrate following the expiration of a contract applies only to disputes involving contractual rights which have *accrued* while the contract was in force. It maintains that because the subcontracting dispute arose after expiration of the contract and involved nothing accruing during the term of the contract, the duty to arbitrate could not have survived its expiration.

In support of this contention, the employer cites two cases decided subsequent to the arbitrator's decision—*Diamond Glass Corp. v. Glass Warehouse Workers & Paint Handlers, Local Union 206,* 682 F.2d 301 (2nd Cir.1982) and *O'Connor Co. v. Carpenters Local Union No. 1408,* 702 F.2d 824 (9th Cir.1983). In *Diamond Glass,* the Second Circuit observed that the union's notice of arbitration was so defective that it failed to "link" the grievance with any right or duty arising under the expired contract. 682 F.2d at 304. Because of this defect the court refused to presume the existence of a duty to arbitrate. *Id.* The case at bar is distinguishable. In this case the union has pointed clearly to a contractual provision that it claims was violated by the employer.

The *O'Connor* decision is not so easily reconciled, however. In *O'Connor,* we held that:

The Union's position in this case is untenable because the labor dispute involved here arose following termination of the old agreement and was not covered by that contract....

. . . .

It is axiomatic that an agreement to arbitrate found in a terminated labor contract and arising after the contract terminated cannot be applied to a grievance which the parties have not agreed would be subject to arbitration after expiration of the contract.

*Id.* at 825 (citation omitted).

It is noteworthy that we stated that the dispute in *O'Connor* was not "covered" by the old contract. *Id.* It may be possible to distinguish *O'Connor* on this basis for the dispute at issue in the present case was clearly covered by the old contract. *Cf. Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 890 (2nd Cir.1982) (it is not fatal that arbitrator's decision facially conflicts with judicial precedent where a plausible argument can be made that case is distinguishable).

Moreover, the broad reading which the employer would give to *O'Connor* conflicts with the principles espoused in *Holly Sugar*

Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union, supra. In Holly Sugar we noted that:

> There is no inherent prohibition against arbitration awards which are based upon the violation of an expired collective bargaining agreement. . . . Indeed such a prohibition would in a significant number of cases, frustrate the salutary policy of a national law encouraging the solution of lingering labor disputes by grievance procedures established through the collective bargaining process.

412 F.2d at 903–04 (citations omitted).

In any event, we need not determine the parameters of Nolde Brothers nor need we attempt to harmonize it with O'Connor or O'Connor with Holly Sugar at this juncture. The result in the instant case is directed by our standard of review. As we noted earlier, even assuming, arguendo, that the arbitrator misinterpreted Nolde Brothers and as a result deviated somewhat from direction arguably indicated by O'Connor, we must defer to this interpretation. By consenting to the arbitrator's consideration of the arbitrability question, the parties bound themselves to his decision. They are bound even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusions.

Clearly, the arbitrator has not manifested a disregard for the law nor can we say that the award violates the law or any explicit, well defined and dominant public policy. Therefore, we hold that the district court did not err in refusing to vacate the award on the jurisdictional ground raised by the employer.

### III

The employer next contends that the district court erred in deferring to the arbitrator's conclusion that the no-subcontracting obligation survived the expiration of the collective bargaining agreement. We find no merit in this argument.

In examining the enforceability of the subcontracting clause the arbitrator looked to and interpreted the contract's "General Savings Clause". That clause provides in part: .

> It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement is therefore intended to apply no broader than that permitted by law.

The arbitrator concluded that the clause evinced an intent on the part of the parties to give him the authority to look to external law for guidance in interpreting and applying the agreement.

The arbitrator's interpretation that the savings clause evinced the parties' intent to give him the power to look to external law when necessary to resolve contractual disputes is not implausible. Pacific Motor Trucking v. Automotive Machinists, 702 F.2d 176, 177 (9th Cir.1983). The arbitrator's decision on this point draws its essence from the agreement and we may not substitute our own preferred interpretation. W.R. Grace & Co. v. Local 759, Int'l Union of Rubber, Cork, Linoleum & Plastic Workers, —— U.S. at ——, 103 S.Ct. at 2182. The arbitrator was called upon to determine the extent of his authority in this regard and the decision rendered was within his power. Therefore, we conclude that the district court properly deferred to the arbitrator's interpretation that the savings clause empowered him to look to external law where required to resolve the dispute before him.

The employer next argues that even if the arbitrator was authorized to look to external law, his decision conflicts with substantive principles of labor law and therefore is void and unenforceable. The employer asserts that the award conflicts with the law in three respects: (1) the arbitrator erred in concluding that the law imposes the continuation of an expired labor agreement; (2) the conduct complained of occurred after impasse was reached and any continuing obligation ceased upon reaching impasse; and (3) any continuing duty was suspended because the union no longer rep-

resented a majority of the unit employees. We treat these contentions seriatim.

 Contrary to the employer's assertion, the arbitrator did not rule that the contract itself remained in force. The arbitrator carefully observed that not all obligations in a collective bargaining agreement survive its termination. He ruled simply that the subcontracting prohibition "lies at the very heart of the employer-employee relationship" and as a result was a term or condition of employment which could not be unilaterally disregarded by the employer following expiration of the contract but prior to impasse. In reaching this conclusion the arbitrator placed reliance on cases such as *NLRB v. Carilli,* 648 F.2d 1206 (9th Cir.1981); *Peerless Roofing Co. v. NLRB,* 641 F.2d 734 (9th Cir.1981); and *Clear Pine Mouldings, Inc. v. NLRB,* 632 F.2d 721 (9th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981).

We do not find that the arbitrator's legal reasoning manifests a disregard for the law, *American Postal Workers v. U.S. Postal Service,* 682 F.2d at 1284, nor does it contravene any explicit federal labor policy. *W.R. Grace & Co. v. Local 759, Int'l. Union of Rubber, Cork, Linoleum & Plastic Workers,* —— U.S. at ——, 103 S.Ct. at 2182. Therefore, deference to his conclusion is required.

 As to the second contention, the arbitrator made a factual finding that impasse was not reached until August 26, 1980 and that the grievance at issue was filed prior to that date. This finding clearly implies that the subcontracting grievance actually arose prior to impasse. We are unpersuaded that these findings are erroneous. Even if the evidence could lead to contrary findings, we would be constrained by the rule of deference. *Riverboat Casino, Inc. v. Local Joint Executive Board,* 578 F.2d 250, 251 (9th Cir.1978).

 The employer's third contention is equally meritless. The arbitrator expressly found that "as of March 1980, the Union represented a majority of the employees working for the company." It is patent that the employer failed to convince the arbitrator that at the time the dispute

arose the union no longer enjoyed majority support. *Cf. NLRB v. Mar-Len Cabinets, Inc.,* 659 F.2d 995, 998–99 (9th Cir.1981) (union enjoys rebuttable presumption of majority support following expiration of collective bargaining agreement). Moreover, the employer cannot defend on the ground that the union does not represent a majority of the unit when this alleged fact is due solely to the employer's unilateral conduct of subcontracting out its carpentry work in contravention of the obligatory subcontracting restrictions. *Cf. id.* at 999 (alleged loss of majority support not raised in good faith where lost support directly attributable to employer's failure to bargain in good faith).

We conclude, therefore, that the district court did not err in deferring to the arbitrator's determination that the subcontracting restrictions survived the expiration of the collective bargaining agreement.

## IV

 The employer next contends that neither the arbitrator nor the district court had jurisdiction to consider whether the subcontracting restrictions survived the expiration of the collective bargaining agreement. It asserts that because this question includes an analysis of the employer's duty to maintain the status quo following termination of the agreement under section 8(a)(5) of the National Labor Relations Act [NLRA], 29 U.S.C. § 158(a)(5), it falls within the primary jurisdiction of the National Labor Relations Board [the Board].

Courts are not primary tribunals for adjudicating issues arising under sections 7 and 8 of the NLRA. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Such issues are generally within the exclusive competence of the Board. *Id.* at 245, 79 S.Ct. at 779. The doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the Board. *Glaziers & Glassworkers Local 767 v. Custom Auto Glass Distributors,* 689 F.2d 1339 at 1342 (9th Cir.1982). However, it

does not follow that all considerations touching upon rights or obligations emanating from sections 7 or 8 are outside the competence of the courts. *See e.g. Kaiser Steel Corp. v. Mullins,* 455 U.S. at 83–86, 102 S.Ct. at 859–60. Therefore, the Supreme Court has held that "[t]he authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the court in suits under § 301." *Smith v. Evening News Assoc.,* 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); *See also Amalgamated Assoc. of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 297–301, 91 S.Ct. 1909, 1923–1925, 29 L.Ed.2d 473 (1971); *Sheet Metal Workers' Int'l Assoc., Local 252 v. Standard Sheet Metal, Inc.,* 699 F.2d 481, 483 (9th Cir.1983); *Northern Cal. Dist. Council of Hod Carriers v. Opinski,* 673 F.2d 1074, 1075 (9th Cir. 1982). The court observed that problems arising because of concurrent jurisdiction over acts constituting simultaneously a breach of contract and an unfair labor practice could best be dealt with on a case by case basis. 371 U.S. at 197–98, 83 S.Ct. at 268–69.

In this case, the employer relies primarily on *Cement Masons Health & Welfare Trust Fund v. Kirkwood-Bly, Inc.,* 520 F.Supp. 942 (N.D.Cal.1981), aff'd., 692 F.2d 641 (9th Cir. 1982) for its contention that the section 301 contract "exception" to the primary jurisdiction doctrine is inapplicable (*see Beriault v. Local 40, Super Cargos & Checkers,* 501 F.2d 258, 261 (9th Cir.1974)). In *Cement Masons* a trust fund brought suit in district court under section 301 of the Act to collect from the defendant employer unpaid fringe benefit contributions allegedly accruing after expiration of the collective bargaining agreement. This court affirmed the district court's holding that the action was preempted under the doctrine of primary jurisdiction because the suit was dependent entirely upon the employer's duty to maintain the status quo under section 8(a)(5) of the NLRA. 520 F.Supp. at 944.

In the instant case, by contrast, the employer, who initially invoked the jurisdiction of the district court seeking vacation of the arbitration award, now asserts that the district court lacked jurisdiction over the inquiry. The essential distinction between this case and *Cement Masons* is that this case involves judicial review of an arbitration. Here, the ultimate issue before the arbitrator was the agreement of the parties. In the final analysis the arbitrator was called upon to inquire into the intent of the parties in interpreting and applying the collective bargaining agreement. He discharged this duty and, as we have seen, the district court necessarily deferred to his determination. This is exactly the type of case which falls within the section 301 exception to the primary jurisdiction doctrine. *Cf. Glaziers & Glassworkers Local 767 v. Custom Auto Glass Distributors,* 689 F.2d at 1343 (concluding that unfair labor practice which also involved contract interpretation was within the concurrent jurisdiction of the court and the NLRB). The court in *Cement Masons* recognized this distinction in distinguishing *Nolde Brothers, supra. Id.* at 946.

We reject the employer's contention that this case was preempted under the doctrine of primary jurisdiction. Jurisdiction here was concurrent and not exclusively vested in the National Labor Relations Board.

V

Lastly, the employer maintains that the award may not be upheld because it conflicts with the express language of the agreement. The employer asserts that, by the terms of the contract, the subcontracting restriction is inapplicable where no carpentry employees are utilized on the job site. It contends that the evidence adduced establishes that the employer subcontracted all of its carpentry work and did not engage its own carpenters on the jobsite following expiration of the agreement. Thus, the subcontracting restriction was never invoked. Therefore, it asserts, the arbitrator ignored the terms of the contract in concluding that the employer violated the subcontracting provision.

The contract provision at issue provides in pertinent part:

2. This Section 50 shall be applicable only when an individual employer is actually employing employees covered by this agreement at a particular jobsite or jobyard. The terms and conditions of this Agreement, insofar as it affects Employer and the individual employer, shall apply equally to any subcontractor or any tier under the control of, or working under oral or written contract with such individual employer on any work covered by this Agreement to be performed at the job site or job yard, and said subcontractor with respect to such work shall be considered as an individual employer covered by this Agreement.

The arbitrator made no express finding as to whether the employer directly engaged "covered" employees on the jobsite. Such a finding was not necessary, however. We find that the clause quoted above applied to any employees working in classifications covered by the agreement, whether employed directly or through a subcontractor. This interpretation is consistent with the express language of Section 50. Subsection 2 of Section 50, provides that the "terms and conditions of this Agreement" are applicable to any subcontractors performing work "covered by this Agreement" on the jobsite. Furthermore, it defines subcontractors as "individual employer[s] covered by this agreement". It would be reasonable to conclude that the parties intended the work preservation clause to apply where all covered work was performed on a jobsite by a subcontractor of the signatory employer.

Another interpretation would allow the employer to evade the subcontracting restrictions merely by subcontracting all the work at a particular jobsite. We believe that this reasoning was the basis of the arbitrator's interpretation of the contract and resulting award. Therefore, the issue of whether the employer directly engaged covered employees on the jobsite was irrelevant to the questions presented to the arbitrator and no express finding was required. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

We conclude, therefore, that the employer's contention essentially goes to the interpretation of section 50. We find no reason "to assume that this arbitrator has abused the trust the parties have confided in him" by disregarding the express terms of the contractual provision that he was called upon to interpret. *Id.* Because the question is essentially one of contract interpretation, we defer to the arbitrator. *Id.* at 599, 80 S.Ct. at 1362.

AFFIRMED.

## APPENDIX
### Section 50
### Work Preservation
### Contracting and Subcontracting

1. The purpose of this Section 50 is to preserve and protect the work opportunities that will be available to employees covered by this Agreement at the job site or job yard.

2. This Section 50 shall be applicable only when an individual employer is actually employing employees covered by this Agreement at a particular job site or job yard. The terms and conditions of this Agreement, insofar as it affects Employer and the individual employer, shall apply equally to any subcontractor or any tier under the control of, or working under oral or written contract with such individual employer on any work covered by this Agreement to be performed at the job site or job yard, and said subcontractor with respect to such work shall be considered as an individual employer covered by this Agreement.

3. If an individual employer shall subcontract work herein defined, such subcontract shall be in writing and shall state that such subcontractor agrees to be bound by and comply with all the terms and provisions of this Agreement. A copy of the subcontract or a certificate showing the binding clause and signature shall be furnished to the Union upon demand.

. . . .

8. Notwithstanding any other provision of this Agreement or this Section 50, on any residential construction, all work covered by this Agreement shall be performed by the

prime contractor or prime carpentry contractor direct with carpenters on the payroll of the prime contractor or the prime carpentry contractors, on a straight per diem basis, and no such work shall be subcontracted to any other contractor except the installation of foundations, overhead garage doors, plastic sink tops, hardwood floors, roof and exterior wall shingles and traditional normal drywall, patio glass sliding doors, stairs and underlayment, base, accoustical ceilings and steel scaffolding. The prime carpentry contractor shall provide all materials and the prime contractor or prime carpentry contractor shall employ all employees covered by this Agreement who shall be shown on his or its payroll records except as provided herein. The remedies for default provided in this subsection shall apply directly to the prime contractor. The prime carpentry contractor shall be responsible for and shall directly employ employees covered by this Agreement to perform all work in connection with the construction of all walls and roof framing, installation of all sub-flooring, all exterior sheathing, installation of all metal and wood sash and doors, installation of all interior trim, installation of all types of cabinets, wardrobes and sliding doors.