**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 332, AFL–CIO, Plaintiff,**

v.

**HYLAND WILSON ELECTRICAL CONTRACTORS, INC., et al., Defendants.**

No. C–87–20350 RPA.

United States District Court, N.D. California, San Jose Division.

Sept. 8, 1987.

**996**

Wylie, Blunt, McBride, Jesinger & Sure, San Jose, Cal., for plaintiff.

Paul V. Simpson, Thierman, Simpson & Cook, San Francisco, Cal., Nevo F. Capitina, Mountain View, Cal., for defendants.

AGUILAR, District Judge.

## I. INTRODUCTION:

The crux of this case is plaintiff International Brotherhood of Electrical Workers, Local Union No. 332, AFL–CIO's (hereafter "Local 332" or the "Union") attempt to enforce an arbitration award. The losers of the arbitration decision were defendants Hyland Wilson Electrical Contractors, Inc. ("Hyland Partnership"), Patrick Hyland and Jo Hyland individually, and Cannon Electric. The Hylands and their corporation, Hyland Wilson Electric, Inc. ("Hyland Inc."), oppose the award alleging that the Hyland Partnership ceased to exist in 1977 and that their present corporation is dis-

tinct from the predecessor partnership. Cannon (which is owned in large part by the Hylands) also seeks to vacate the arbitration award. As explained below, the Court will grant plaintiff's motion to affirm the arbitration award. Amendment of the complaint is not necessary, and thus the Court will deny the motion to amend. All three of defendants' motions will be denied.

## II. FACTS:

The National Electrical Contractors Association ("NECA") is a multi-employer association formed by employers in the electrical contracting industry to negotiate terms and conditions of employment for employees working in the industry. NECA is party to a collective bargaining agreement (the "Agreement") with plaintiff Local 332. Employers may become parties to the Agreement by signing a document entitled "Letter of Assent A." When an employer signs this form, it assigns its bargaining rights to the NECA. Presumably, this also allows the employer to receive work procured by the NECA.

In February 1977, the Hyland Partnership became a signatory to the Agreement by means of a Letter of Assent A. Patrick Hyland signed the Letter of Assent A in his capacity as co-partner. Again in September 1979, Patrick Hyland signed a Letter of Assent A with NECA on behalf of the Hyland Partnership. However, this time Mr. Hyland signed in his capacity as "Secretary." Despite the difference in titles, unrebutted testimony by the Union's representative, Bruce Baxter, states that Mr. Hyland did not indicate that the Hyland Partnership or his relationship to it had changed in any significant manner.

In fact, the Hyland Partnership went out of business in 1977. A successor corporation known as Hyland Wilson Electric, Inc. ("Hyland Inc.") was formed. From the evidence presented in these motions, it appears that the Hyland Partnership merely changed its legal form and incorporated to become Hyland, Inc. All indications are that Patrick and Jo Hyland continued to operate as they had before. The Union was not informed of any change in the

Hyland Partnership's legal status, nor did the partnership act differently. Unrebutted declaration testimony of Mr. Baxter, the Union official who countersigned the Letter of Assent A in 1979, establishes that the partnership never gave any notice of its change in status. Nor did the partnership ever revoke its subscription to the Agreement. One year after the dissolution of the partnership, Patrick Hyland continued to use partnership stationery. Indeed, as noted above, the 1979 Letter of Assent A was signed by Patrick Hyland as Secretary for the Hyland Partnership.

In January of 1983, the parties signed another Letter of Assent A. On that occasion, Herb Wilson signed the Letter in his capacity as President of "Hyland Wilson Electric, Inc." Bruce Baxter who once again signed the Letter on behalf of Local 332 reports that at no time did Wilson ever state that any legal relationships had changed or that his company was anything but a successor or alter ego of the Hyland Partnership.

In April 1982, a grievance was filed under the Agreement by the Union against Hyland, Inc.. Patrick Hyland sent a written response to Local 332 addressing the grievance. In July 1982, a Union–NECA Management Committee took written and oral evidence regarding the grievance against Hyland, Inc. Patrick Hyland appeared on behalf of Hyland, Inc. and stated the position of his company. Based on the evidence presented, the joint committee found Hyland, Inc. guilty and ordered it to make restitution.

Further evidence has been presented showing that Hyland, Inc. participated in other grievance disputes. The point of this evidence is that Hyland, Inc. acted at all times as if it was party to the Agreement. Indeed, the undisputed evidence shows that Hyland, Inc. stepped squarely into the shoes of the defunct Hyland Partnership. For practical as well as legal purposes, Hyland, Inc. is the successor/alter ego of the Hyland Partnership.

There is some confusion in this case because Local 332 failed to properly name Hyland, Inc. in a grievance that was filed

in July 1986. The grievance alleged that the Hyland Partnership was an alter ego of Cannon Electric (Cannon will be discussed shortly) and that the two employers were violating the Agreement. In December 1986, a Union–NECA Management Committee (the "Committee") hearing was held on the July grievance. Both Patrick Hyland and the attorney for Hyland, Inc., Nevo Capitina, were present at the hearing. Capitina informed the Committee that the partnership was defunct and that Hyland, Inc. would not answer to a grievance filed against the Hyland Partnership. Further, Capitina told the Committee that Hyland, Inc. had not received notice of the hearing, that it had never signed a Letter of Assent with Local 332, and that it refused to participate in the hearing. Whereupon, Capitina and Mr. Hyland departed from the hearing.

The Committee continued with the hearing despite Hyland, Inc.'s remarks. The Committee concluded that Cannon Electric was the alter ego of Hyland, Inc. and that both of the employers had violated the Agreement. A variety of remedial orders were entered against the employers. Local 332 now moves this Court to confirm this arbitration award. The Union makes this motion while seeking leave to amend its Complaint to properly name Hyland, Inc.. Hyland, Inc. and Cannon Electric have filed countermotions to vacate the arbitration decision, and Hyland, Inc. seeks to have the Complaint dismissed for failing to state a claim upon which relief can be granted.

III.  DISCUSSION:

(A) *Legal Background:*

Federal law strongly favors arbitration of labor disputes. Under 9 U.S.C. § 9, an arbitration award may be confirmed in any U.S. District Court where such an award is made. The Supreme Court, and decisions in this circuit reflecting the Supreme Court's views, unwaiveringly has held that the district court's role in reviewing an award is extremely limited. *See W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 764–65, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). "[I]f on its face the award

represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *George Day Const. v. United Bro. of Carpenters*, 722 F.2d 1471, 1477 (9th Cir.1984).

■ The arbitrators' decision will not be upset even if it is ambiguous, or contains factually or legally erroneous conclusions. *Id.* The only limits on the viability of the arbitrators' decision is that it not embody "a manifest disregard of the law." *American Postal Workers v. U.S. Postal Service*, 682 F.2d 1280, 1284 (9th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). In other words, affirmance should be withheld only if the arbitrators have clearly violated the law or transgressed a "well defined and dominant public policy." *George Day*, 722 F.2d at 1477 (citations omitted).

(B) *The Challenges Presented To This Award By Hyland, Inc.:*

Hyland, Inc. raises essentially two challenges to the confirmation of the award. The first is that Hyland, Inc. was not party to the Agreement. The second is that Hyland, Inc. did not receive notice of the Committee hearing. Both of these objections are without merit.

■ As was made clear in the discussion of the facts, Hyland, Inc. was party to the Agreement—both by a pattern of practice and the fact of its signature in 1983 to a Letter of Assent A. As for the question of notice, Hyland, Inc., through its attorney, has admitted to its presence at the December hearing. Furthermore, Hyland, Inc. states that it deliberately chose to leave the hearing rather than address the issues presented by the grievance. Under such circumstances, the Committee could reasonably find that notice was adequate and continue with the hearing. Hyland, Inc. has now waived its right to contest the award by its actions and the Court will deny the motion to vacate. Good cause appearing therefor, the Court hereby grants plaintiff's motion to confirm the arbitration award.

**(C)** *Motion to Amend and Motion to Dismiss:*

■ The Court finds that the formal names for the entities Hyland, Inc. and the Hyland Partnership are confusingly similar. Under the doctrine of idem sonans, the Court concludes that plaintiff's naming of the Hyland Partnership is satisfactory to proceed against Hyland, Inc.. The misnaming of the parties did not prejudice the existing entity and adequate notice was given for Hyland, Inc. to defend itself. Consequently, the Court concludes that amendment of the Complaint is not necessary to state a claim against Hyland, Inc. rather than the Hyland Partnership; the judgment that will follow this ruling may be enforced against Hyland, Inc. the same as it would be enforceable against the Hyland Partnership.

■ The motion to dismiss focuses on lack of service with respect to the arbitration hearing. That service is not the relevant service for purposes of prosecuting this lawsuit. The facts are clear that plaintiff did properly serve Hyland, Inc. (and all the defendants for that matter) in connection with the Complaint in this case. Whether service was adequate or proper in connection with arbitration hearing is for the Committee to decide, subject only to the limits of due process. The Committee apparently felt that service on Hyland, Inc. was adequate given the fact that Hyland, Inc. was present at the hearing. Hyland, Inc. never requested more time to prepare for the hearing; instead, Patrick Hyland and his attorney announced their unwillingness to participate in the hearing and exited the scene. Under those circumstances, the Court finds it proper to affirm the Committee in its award. However, that decision relates to the motion to vacate. Because service in connection with this lawsuit was undeniably timely and sufficient, the motion to dismiss is hereby denied.

**(D)** *Cannon Electric's Motion to Vacate the Arbitration Award*

Cannon Electric opposes the arbitration award on basically two grounds:

(1) it was not party to the Agreement;

(2) (a) it was not served with the July 1986 grievance;

(b) it was not served with notice of the December hearing before the Committee;

(c) it was not served with notice of the Committee's decision after the grievance hearing.

The Court will address these in turn.

**(1)** *Was Cannon Electric Party to the Agreement?*

■ Cannon Electric itself definitely was not party to the Agreement. But that is not the issue. The question is whether Cannon Electric and Hyland, Inc. are alter egos so that the Committee was justified in seeking to enforce the award against Cannon Electric. If Cannon Electric is the alter ego of Hyland, Inc., then it can be considered bound by the arbitration award as if it was a formal signatory of the Agreement.

The first and perhaps most compelling evidence that Cannon Electric is Hyland, Inc's alter ego lies in the archives of the State of California. An investigation of the corporation records of the California Secretary of State (the "Secretary") shows that in December 1984, a statement was filed by Cannon Electric with the Secretary. The statement reported that the officers of Cannon Electric were none other than Minnie Jo Hyland and Patrick Hyland. These individuals were also the directors of the corporation. The designated agent for service of process was Minnie Joe Hyland. The addresses for both of the individuals in all their capacities was the same home in Sunnyvale, California. A similar check on Hyland, Inc. revealed that Minnie Joe and Patrick Hyland were the sole officers and directors of Hyland, Inc. in 1985. The only difference in the statements of the two corporations was that Patrick was named as the agent designated for service of process. This is fairly pursuasive evidence that the two employers are alter egos.

Ironically, in trying to obscure the state record evidence, Hyland, Inc. only confirmed the contents of those records. On December 18, 1986, one week after the

arbitration hearing, Cannon Electric changed its corporate governorship arrangement—at least on paper. A corporate statement signed on December 18, 1986, and filed officially on January 29, 1987, reflects that Carroll Spencer Hyland and Diana Cannon are now officers of Cannon Electric, and that Ms. Spencer Hyland also serves as the corporation's sole director and agent for service of process. Her listed address apparently is in the same apartment complex with Patrick and Jo Hyland. One cannot help but suspect that this change in the official state records was done on the advice of Hyland, Inc.'s attorney. This incredibly coincidental change in Cannon Electric's management and directorship one week after the arbitration hearing only serves to support the conclusion that Cannon Electric and Hyland, Inc. are alter egos.

The Committee also heard testimony which demonstrated that Cannon Electric was a mere alter ego. For example, work ostensibly being performed by Cannon Electric was done with Hyland, Inc. trucks and ladders. A former employee of Cannon Electric testified that he ordered equipment for the company from Patrick Hyland. Employees working for Cannon Electric also worked for Hyland, Inc. When the Union attempted to get to the bottom of the issue by requesting that Hyland, Inc. complete a questionnaire concerning its relationship with Cannon Electric, Hyland, Inc. refused to do so despite extensions of time in which to respond.

In light of all of these facts, the Court concludes that the requirements for piercing the corporate veil have been met. The Committee only had jurisdiction to impose obligations on signatories of the Agreement. As noted, Cannon Electric is not a signatory of the Agreement. Consequently, the Committee can only enforce the arbitration award against Cannon Electric if this Court finds as a matter of law that Hyland, Inc. and Cannon Electric are alter egos. Two essential elements are required to show that two entities are alter egos: (1) there must be such a unity of interest and ownership that the separate personalities of the corporations do not exist; and (2) the

failure to disregard the corporate forms would result in fraud or injustice. *See Seymour v. Hull and Moreland*, 605 F.2d 1105, 1111 (9th Cir.1980); *Automotriz Del Golfo De California v. Resnick*, 47 Cal.2d 792, 796, 306 P.2d 1 (1957). The Court concludes that both of these elements have been established in this case and that the Committee was entitled to treat Cannon Electric as if it was a signatory of the Agreement.

(2) *Did Cannon Electric Receive Adequate Notice At the Various Points of the Committee's Investigation and Decision?*

 If the Committee's investigation and hearing were a judicial proceeding, then service would be a problem on review here. However, this Court is not reviewing to see if Fed.R.Civ.P. 4 has been satisfied, but instead to determine whether the rough and ready requirements of the Due Process Clause have been met. The key to analyzing this issue is the prior discussion of alter ego status.

Having concluded that Cannon Electric is the alter ego of Hyland, Inc., it follows that notice to Hyland, Inc. is notice to Cannon Electric. As described above, Patrick Hyland and the attorney for Hyland, Inc. were present at the Committee hearing. They had an opportunity at that point to raise their objections or to ask for more time. They did object to lack of service, but they did not ask for more time and did not stay to argue their case before the Committee. Under such circumstances, the Committee did not violate the Due Process Clause by concluding that notice was adequate and by going on to address the grievances. In light of the fact that Patrick Hyland was an officer and director of Cannon Electric at the time of the hearing, as well as the fact that Hyland, Inc. is the alter ego of Cannon Electric, the Court concludes that Cannon Electric's due process rights have not been violated.

Because Cannon Electric is the alter ego of Hyland, Inc. and because it received sufficient notice of the hearing and this lawsuit, the Court hereby DENIES Cannon

Electric's motion to vacate the arbitration award.

## IV. CONCLUSION:

The IBEW/NECA Labor/Management Committee that considered and decided the grievance filed against defendants in this case acted reasonably and within the law. The Court finds that the Committee's decision does not disregard or violate the law or the Constitution, nor does it offend any well defined and dominant public policy. Therefore, the Court has ruled as follows:

(1) Plaintiff's motion for leave to file an amended complaint is DENIED.

(2) Plaintiff's motion to confirm the arbitration award is GRANTED:

(3) Hyland Wilson's motion to dismiss is DENIED:

(4) Hyland Wilson's motion to vacate the arbitration award is DENIED; and

(5) Cannon Electric's motion to vacate the arbitration award is DENIED.

IT IS SO ORDERED.