**NEW ENGLAND MECHANICAL, INC., d/b/a Independent Plumbing Company, Petitioner–Appellant,**

v.

**LABORERS LOCAL UNION 294; Laborer's Contract Admin. Trust Fund, Respondents–Appellees.**

**NEW ENGLAND MECHANICAL, INC., d/b/a Independent Plumbing Company, Petitioner–Appellant,**

v.

**LABORERS LOCAL UNION 294, and Northern California District Council of Laborers, Respondents–Appellees.**

Nos. 89–15569, 89–15594.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided July 30, 1990.

Spencer H. Hipp, Littler, Mendelson, Fastiff & Tichy, Fresno, Cal., for petitioner-appellant.

Sandra R. Benson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for respondents-appellees.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

New England Mechanical, Inc. d/b/a Independent Plumbing Company ("NEM") appeals the district court's grant of summary judgment in favor of Laborers Local Union No. 294 ("Laborers"). The district court ruled that NEM must abide by two arbitration awards previously entered against NEM. NEM argues that the district court erred when it found there were no material disputes of fact as to whether the arbitration panel had jurisdiction over NEM.

We reverse.

## BACKGROUND FACTS

NEM is a plumbing contractor in Fresno, California. It installs plumbing and air conditioning piping for commercial and residential developments. In April of 1986,

NEM purchased the assets, inventory and some accounts receivable and payable from another Fresno business, Independent Plumbing Company ("Independent"). NEM also purchased the right to use the business name of "Independent Plumbing Company."

Independent was originally formed as a sole proprietorship. Some time in the early 1970's, Independent became a corporation. One of the shareholders was John Sequeira. Beginning in 1970, Independent established a bargaining relationship with the Laborers. Independent and the Laborers entered into a collective bargaining agreement ("CBA") in 1970 and renewed that agreement in 1972 and 1977. The CBA required Independent to use Laborers for such work as digging and backfilling ditches. Each of those agreements contained a clause that the CBA would automatically renew itself unless either of the parties invoked a termination provision. Neither Independent nor the Laborers has invoked the termination provision since they signed the 1977 CBA.

In the sales agreement between Independent and NEM, the parties agreed that NEM would only assume those obligations specifically listed in the agreement. Independent also warranted that the sales agreement would not breach any contract that Independent may have had before the sale. The agreement does not discuss whether NEM would assume the CBA that Independent had with the Laborers. The agreement did list Independent's employees at the time of the sale and the list indicated whether the employees belonged to a union.

At the time of NEM's purchase of Independent, none of NEM's officers had any financial or legal interest in Independent. Soon after the sale, NEM's sole shareholder sold 25% of his stock to John Sequeira. Sequeira was also hired to be the general manager of NEM. Also after NEM's purchase of Independent, NEM entered into a bargaining relationship with the Pipe Trades District Council ("Pipe Union").

NEM executed a CBA with the Pipe Union in which NEM agreed that Pipe Union members would perform various jobs including digging and backfilling ditches.[1]

After NEM purchased Independent, several Independent employees continued on their jobs. Two of those employees were members of the Laborers. NEM continued to pay wages to those employees at their union rates. NEM also forwarded payments on behalf of the employees to the Laborers' pension fund. The employees did other work besides those jobs covered by the Laborers' CBA. In October of 1987 and March of 1988, NEM discharged its employees who belonged to the Laborers. Mr. Sequeira told the employees that he was assigning their work to employees who were members of the Pipe Union.

The discharged employees complained to the Laborers and the Laborers filed grievances on behalf of the employees. The disputes were set for hearing in front of a Board of Adjustment. The Board of Adjustment was created by the CBA between Independent and the Laborers. The Board was a permanent entity and consisted of two members selected by the union, two members selected by the employer bargaining association and an arbitrator agreed upon by both the union and the employer association. NEM was notified that the Board of Adjustment would hold a hearing to resolve the employee disputes. NEM responded that it would not attend the hearings because the Board of Adjustment had no authority over NEM. NEM also indicated it believed that even if NEM was bound to the Laborers' CBA, the CBA exempted the disputes from arbitration since the disputes regarded the jurisdictional boundaries of two unions.

The Board of Adjustment proceeded to hear each dispute and decided each in favor of the employee. The Board ordered that NEM reinstate the discharged employees and pay those employees for their lost wages and benefits. NEM did not attend either Board hearing. After the hearings, the Laborers filed a petition in district

---

1. It appears that Independent had entered into a CBA with the Pipe Union although the record does not reflect the length or terms of that agreement.

court to confirm the awards. NEM filed a petition to vacate the awards.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 29 U.S.C. § 185. We have jurisdiction pursuant to 28 U.S.C. § 1291.

This panel reviews de novo a district court's grant of summary judgment. *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1525 (9th Cir.1990). Summary judgment is not appropriate in those cases where the non-moving party has established that there is an actual dispute about a material fact. There will be a material dispute of fact if there is sufficient evidence from which a person could reasonably resolve the dispute in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## DISCUSSION

The district court found that NEM was bound to the Laborers' CBA for two separate reasons. First, NEM was bound merely because NEM was a successor employer to Independent. Second, NEM was bound because its actions indicated that it had adopted the CBA. The district court ruled that summary judgment was appropriate because NEM had failed to present sufficient evidence to create any material disputes of fact. We disagree.

### A. Successor Employer.

■ In general, if an employer takes over another business, the employer is not bound by its predecessor's collective bargaining agreements. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 107 S.Ct. 2225, 2234, 96 L.Ed.2d 22 (1987); *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mech. & Stainless, Inc.* 863 F.2d 647, 651 (9th Cir.1988). At most, the employer will be required to bargain with any unions that the predecessor employer had recognized. *Fall River*, 482 U.S. at 40, 107 S.Ct. at 2234; *Local No. 359*, 863 F.2d at 651. Even then, the new

employer will only have a duty to bargain with a union if the new employer is a "successor" employer. *Local No. 359*, 863 F.2d at 651.

■ An employer is a successor if there is substantial continuity between the new and the old employer. *Fall River*, 482 U.S. at 43, 107 S.Ct. at 2236. In order to assess substantial continuity, the courts and the NLRB look to factors such as "whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Id.*

In this case, the district court found that NEM was a successor employer to Independent. The court noted that NEM had continued to use the same business name as Independent, had maintained the same place and type of business as Independent, and had hired most of Independent's employees. The court concluded that NEM had substantially continued Independent's business. Therefore, NEM was a successor employer. As a successor employer, NEM was bound to any CBA to which Independent was bound.

The flaw in the district court's reasoning is that it assumed that all successor employers will always be bound by the terms of a predecessor's CBA. However, the Supreme Court has continually indicated that a successor employer is only bound to *bargain* with a union which had a CBA with the predecessor. *Fall River*, 482 U.S. at 43, 107 S.Ct. at 2236; *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 261–62, 94 S.Ct. 2236, 2242–43, 41 L.Ed.2d 46 (1974); *N.L.R.B. v. Burns Int'l Sec. Serv.*, 406 U.S. 272, 284, 92 S.Ct. 1571, 1580, 32 L.Ed.2d 61 (1972). In only one case has the Supreme Court indicated that a successor employer may be bound to some of the terms of a predecessor's CBA. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In *Wiley*, a large printing company merged with a smaller

printing company. The Supreme Court ruled that the larger company had a duty to arbitrate with the recognized union from the smaller company. The Court relied on the fact that state law said that a merger did not extinguish any obligations held by the merged company. 376 U.S. at 547–48, 84 S.Ct. at 913–14. The court also relied heavily on the fact that arbitration was favored by federal labor law. 376 U.S. at 549–51, 84 S.Ct. at 914–15. The Court made clear that its ruling was limited to the particular facts of the case and that it was not announcing a general rule that successor employers would always be bound to a predecessor's CBA. *Id.*

■ We recognize that some of our prior decisions may have suggested that a finding of "successorship" was enough to bind an employer to a previous CBA. *See Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289 (9th Cir.1987) (employees purchased business from their employer; employees bound to terms of employers CBA); *Trustees for Alaska Laborers–Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir.1987) (partner in joint venture continues business as sole proprietor; partner bound by terms of CBA entered into by joint venture). However, we have also suggested, without deciding, that any inconsistencies in our opinions may be explained by the fact that a successor employer will be bound to the substantive terms of a prior CBA if the successor employer is merely the alter ego of the predecessor employer. *Local No. 359*, 863 F.2d at 651 n. 4. If the successor employer is merely the alter ego of the predecessor employer, the difference between the two entities is based on technical structure rather than an actual change in ownership or management. *Id.* at 651. In both *Waiola* and *Ferrell*, the successor employer involved basically the same owners and operators as had the predecessor employer. The changes between predecessor and successor were technical in nature rather than a substantive change in the management. But, as we noted in *Local*

*No. 359*, the parties in *Waiola* and *Ferrell* seemed to assume that the successor analysis was dispositive and the court did not discuss the issue. *Id.* at 651 n. 4.

In this case, the change between Independent and NEM involved an almost complete change in ownership and management. Independent was initially operated as a sole proprietorship owned by George Anderson. Anderson then incorporated Independent and three other persons purchased stock. When NEM purchased Independent, NEM had one shareholder, Ara Yazijian. None of NEM's officers had ever been involved with Independent.[2] The sale of Independent to NEM is more like the sale in *Local No. 359* than the sales in *Waiola* and *Ferrell*. The change from Independent to NEM involved a change in ownership and management and was more than a technical change in structure. Therefore, this case falls under the general rule that a successor employer is not automatically bound to the substantive provisions of a predecessor's CBA.

Although the district court erred when it held that NEM was bound to the Laborers' CBA merely because it was a successor employer, NEM could have become bound by the terms of the Laborers' CBA if its actions indicated an intent to be bound. *See Burns*, 406 U.S. at 284, 92 S.Ct. at 1580; *Local No. 359*, 863 F.2d at 651.

B. Adoption of CBA.

■ An employer may indicate its intent to be bound to a previous employer's CBA by explicitly agreeing to be bound or by acting in a way that is consistent with an intent to be bound. *See, e.g., Bay Area Typographical Union, No. 21 v. Alameda Newspapers, Inc.*, 900 F.2d 197, 199–200 (9th Cir.1990); *Carpenters Am'd & Restated Health Benefit Fund v. Holleman Constr. Co., Inc.*, 751 F.2d 763, 770 (5th Cir.1985); *see also International Bhd. of Elec. Workers, Local 532 v. Brink Constr. Co.*, 825 F.2d 207, 215 (9th Cir.1987) (failure to expressly terminate obligations under CBA need not be an adoption of CBA);

---

**2.** After NEM purchased Independent, Yazijian did sell 25% of his stock to one of Independent's shareholders, John Sequeira. Sequeira subsequently became secretary of NEM.

*Arizona Laborers, Teamsters & Cement Masons Local 395 v. Conquer Cartage Co.,* 753 F.2d 1512, 1520 n. 13 (9th Cir.1985) (commenting without deciding that employer could adopt previous CBA). NEM never explicitly adopted the Laborers' CBA. However, it may have manifested its intent to be bound in other ways.

The district court ruled that NEM had adopted the CBA that existed between Independent and the Laborers. The court found that NEM continued to pay the same wages to the Laborers members as called for in the CBA. NEM contributed to the Laborers Trust Fund and submitted trust reports. The court also found that NEM had requested members from the Laborers' union hiring hall. Furthermore, the court noted that the purchase agreement between NEM and Independent included a clause that the purchase would not breach any of Independent's prior obligations. The purchase agreement indicated that NEM would continue to employ some of Independent's workers and that some of those workers belonged to unions. The court concluded that there was no material dispute as to the fact that NEM intended to be bound by the CBA. However, NEM presented evidence that it contributed to the Laborers Trust Fund because it had a legal obligation to contribute payments if it employed *any* union worker on a prevailing wage job. NEM's business manager, Sequeira, testified that NEM never made trust fund payments because the Laborers' CBA required NEM to so do, but only because NEM had an independent legal obligation to contribute. Sequeira stated that NEM would only contribute to the fund when the employees had worked on a

prevailing wage job. Sequeira also testified that NEM never called the Laborers' hiring hall for workers but that workers would just come around the business and NEM would give them work if it was available. The Laborers would then send a union referral slip to NEM after NEM had already assigned work to a union member.

NEM also disputes that the purchase agreement indicated that it had agreed to assume the Laborers' CBA. NEM notes that the agreement contains a clause which states that NEM would not assume any of Independent's obligations unless that obligation was specifically listed in the purchase agreement. The agreement never specifically refers to the Laborers' CBA.[3] At the very least, the proper interpretation of the purchase agreement is cloaked in ambiguity and presents issues of fact regarding the parties' intent.

NEM presented sufficient evidence to dispute the Laborers' claim that NEM had adopted the CBA. The district court should not have granted summary judgment in favor of the Laborers.[4]

C.  Arbitrability.

In general, the judiciary must decide whether a dispute between an employer and a union is a dispute subject to arbitration. *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Northern Calif. Newspaper Guild Local 52 v. The Sacramento Union,* 856 F.2d 1381, 1383 (9th Cir.1988). As we have noted: "The arbitrator should not determine his or her own jurisdic-

---

3.  It should be noted that the fact that a CBA contains a successorship clause does not mean that a successor employer will necessarily be bound to the CBA. *See Howard Johnson,* 417 U.S. at 259 n. 3, 94 S.Ct. at 2241 n. 3. However, the question remains whether Independent breached its contract with the Laborers when it did not insist that NEM adopt the Laborers' CBA when NEM purchased Independent.

4.  NEM also argued that it could not be bound to the CBA because the Laborers had not produced a written agreement between the Laborers and Independent that covered the time period at

issue here. NEM's claim is meritless. The CBA between Independent and the Laborers contained an automatic renewal clause. The CBA would renew under its own terms as long as neither Independent nor the Laborers requested that the CBA be terminated. Neither Independent nor the Laborers ever requested that the CBA be terminated. NEM does not dispute the fact that the CBA contained an automatic renewal provision or that neither the Laborers nor Independent requested that the CBA be terminated. The district court did not err when it found that the CBA was in force during the time period at issue here.

tion...." *Pipe Trades Council of N. Calif., Local 159 v. Underground Contractors Ass'n of N. Calif.*, 835 F.2d 1275, 1278 (9th Cir.1987). However, the courts will be divested of that authority if the parties "clearly and unmistakably provide" that an arbitrator is to decide whether a dispute is subject to arbitration. *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418.

■ We have indicated that the parties may state in their CBA that an arbitrator has the authority to decide whether a dispute falls within the CBA's arbitration clause. *See United Food & Commercial Workers Union v. Lucky Stores, Inc.*, 806 F.2d 1385, 1386 (9th Cir.1986). Similarly, the parties may empower the arbitrator to decide arbitrability through the use of a broad arbitration clause. *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510–11 (9th Cir.1987) (arbitration clause covered any grievance or controversy. Arbitrator decides dispute.); *compare Northern Calif. Newspaper*, 856 F.2d at 1383 (arbitration clause covered all applications of CBA. Court decided whether dispute was arbitrable.)

■ The question in this case is whether the Laborers and Independent have clearly and unmistakably provided in their CBA that the Board of Adjustment should determine whether a dispute is arbitrable. The CBA provides that the Board of Adjustment should resolve "[a]ny dispute regarding the interpretation or application of this Agreement, other than a jurisdictional dispute...." The CBA clearly indicates that the Board of Adjustment may not resolve any jurisdictional disputes. However, the question is whether the Board has the authority to decide whether or not the dispute is, in fact, jurisdictional.

In a similar case, we ruled that an arbitrator did have the authority to decide whether a dispute was jurisdictional. *Frederick Meiswinkel, Inc. v. Laborer's Union Local 261*, 744 F.2d 1374, 1377 (9th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1394, 84 L.Ed.2d 783 (1985). In *Meiswinkel*, the arbitration clause at issue used the same language as the clause in this case. We stated that "the arbitrator had the authority to decide whether the dispute was in fact jurisdictional" because that decision "would have been an act of legitimate contract interpretation under ... the agreement." 744 F.2d at 1377. Given *Meiswinkel*, the Board of Adjustment in this case was empowered to interpret what actions the parties intended to cover when they used the term "jurisdictional dispute." Therefore, the Board had the authority to determine whether the Laborers' claims involved jurisdictional disputes.

D. Nature of This Dispute.

■ We subject an arbitrator's award only to a very limited and deferential review. *Stead Motors v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1204–05 (9th Cir.1989). We will uphold an arbitrator's award as long as "the award represents a plausible interpretation of the contract." *Local No. 359*, 863 F.2d at 653 (citations omitted).

■ The Board determined that the Laborers' dispute was not jurisdictional. Instead, the Board treated the dispute as presenting the issue of whether NEM had properly terminated the employees. The Board's decision squarely contradicts our decision in *Meiswinkel.* The *Meiswinkel* court interpreted the same arbitration clause as was present in this case. Furthermore, the facts are remarkably similar to this case. The only distinctions between this case and *Meiswinkel* make no real difference to the analysis. The differences are twofold.

First, in *Meiswinkel*, the Laborers had taken its disputes to the point of picketing before it finally filed a grievance and sought arbitration. However, that is little different from this case, for here it cannot be denied that the Laborers made it quite clear that it disputed NEM's right to assign the work to the Pipe Union members. The Laborers made its dispute clear by grieving as soon as NEM assigned the work to the Pipe Union. It hardly helps to say that there is no jurisdictional dispute because NEM need only give the work to a Labor-

**1346**

ers' member. If that were done, the Pipe Union could grieve because its members no longer received the work.

 Second, after the arbitrator ruled in *Meiswinkel,* the NLRB had ruled that there was a jurisdictional dispute. However, the NLRB decision did nothing to change the context in which the dispute arose and did nothing to change the language of the arbitration clause. The NLRB decision did not create a fact; it confirmed one. Thus, the question to be decided there was precisely the same as the one which now confronts us. The important thing to note is that in both *Meiswinkel* and this case, thoughtful reflection shows that the very heart of the problem is a jurisdictional one. Both unions in this case were in a position to insist that NEM give certain work to their members. Just as it was not important in *Meiswinkel,* it is not important here whether the allocation of the work is ultimately made by the employer, the two unions or the NLRB. The issue is whether this jurisdictional dispute should be resolved by an arbitration panel whose members include representatives from only one of the affected unions. It seems unnatural to hold that the parties would have intended any such thing. *Meiswinkel* determined that it was implausible to interpret the contract language of the Laborers' CBA to reach that unnatural result. We face the same language; we must reach the same conclusion, for *Meiswinkel* controls.[5]

### CONCLUSION

A successor employer is not generally bound to a CBA between a union and a predecessor employer. However, by its actions the successor employer may adopt the terms of the CBA. Furthermore, the successor may be bound to the CBA if it is merely an alter ego of the predecessor employer. The evidence shows that NEM was not the alter ego of Independent.

Therefore, we reverse the district court's order on that issue. We also reverse the district court's finding that there was no material dispute of fact as to whether NEM adopted the Laborers' CBA.

Finally, we reverse the district court's order that the arbitration award against NEM should be upheld. We do so because this was a jurisdictional dispute. Therefore, it was excluded from arbitration before the Board of Adjustment. We remand this case to the district court with directions that it dismiss the Laborers' petition to affirm the arbitration award and grant NEM's petition to vacate the arbitration award.

REVERSED AND REMANDED.

---

**5.** The fact that NEM refused to participate in the arbitration hearing does not support vacating the awards. Ex parte arbitration is allowed when the parties have agreed to designate an arbitrator in advance of any dispute. *Toyota of Berkeley v. Automobile Salesmen's Union Local* *No. 1095,* 834 F.2d 751, 754 (9th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988), *am'd,* 856 F.2d 1572 (9th Cir.1988). In this case, the CBA sets up a permanent arbitration panel. Therefore, ex parte arbitration was appropriate.