984 F.2d 340
 142 L.R.R.M. (BNA) 2388, 124 Lab.Cas. P 10,531
 SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS,
Plaintiff-Defendant in Intervention-Appellee,
v.
BERRY CONSTRUCTION, INC., Defendant-Appellant,
and
L & M Plumbing, Inc., Plaintiff in Intervention-Appellant.
SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS,
Plaintiff-Defendant-Intervenor-Appellee,
v.
BERRY CONSTRUCTION, INC., Defendant-Appellant,
v.
L & M PLUMBING, INC., Plaintiff-Intervenor-Appellant,
and
Southern California Pipe Trades District Council No. 16,
Plaintiff-Intervenor.
Southern California District Council of Laborers,
Plaintiff-Defendant-Intervenor-Appellee,
Berry Construction, Inc., Defendant-Appellee,
L & M PLUMBING, INC., Plaintiff-Intervenor,
v.
SOUTHERN CALIFORNIA PIPE TRADES DISTRICT COUNCIL NO. 16,
Plaintiff-Intervenor-Appellant.
 Nos. 91-55849, 91-56316, 91-56317.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided Jan. 28, 1993.
 
 Stuart H. Young, Hill, Farrer & Burrill, Los Angeles, CA, for defendant-appellant-appellee Berry Const., Inc. and plaintiff-intervenor-appellant L & M Plumbing, Inc.
 Law Offices of Jeffrey L. Cutler, Burbank, CA, for plaintiff-intervenor-appellant Southern California Pipe Trades Dist. Council No. 16.
 Alexander Cvitan, Reich, Adell & Crost, Los Angeles, CA, for plaintiff-defendant-intervenor-appellee Southern California Dist. Council of Laborers.
 Appeal from the United States District Court for the Central District of California.
 Before D.W. NELSON and REINHARDT, Circuit Judges, and MARION J. CALLISTER, District Judge.*
 D.W. NELSON, Circuit Judge:
 
 
 1
 Appellants Berry Construction, Inc. ("Berry"), Southern California Pipe Trades District Council 16 ("Pipe Trades"), and L & M Plumbing, Inc. ("L & M") appeal the district court's order granting summary judgment in favor of Southern California District Council of Laborers ("Laborers") and ordering Berry to proceed with arbitration of a grievance arising under a collective bargaining agreement. Appellants assert that the grievance is a jurisdictional dispute which is excluded from arbitration, while the Laborers contend that it is an arbitrable subcontracting dispute. We find that this dispute properly is resolved through normal arbitration procedures and affirm the district court.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Berry was bound to a collective bargaining agreement ("CBA") with the Laborers through its membership in the United General Contractors ("UGC"), which represents member-employers in the construction industry. This CBA covers "all work coming within the claimed jurisdiction of the Laborers," including the disputed "laying and installation of pipe." The CBA contains a broad arbitration clause, Article IV(A), which establishes that "all grievances or disputes arising between [the parties] over the interpretation or application of the terms of this Agreement shall be settled by the procedures set forth in Article VI."[1]
 
 
 3
 However, "jurisdictional disputes"[2] are excluded by Article VI(G) from the normal grievance process, and are subject to a separate resolution procedure.[3] The substantive provision at issue is found in Article V, which prohibits subcontracting to entities which are not party to an agreement with the Laborers or other signatory unions.[4] Furthermore, this article states explicitly that "[a]ny dispute involving this Article will be resolved under the grievance procedure of this Agreement." This dispute presents the question of when a "subcontracting" violation is actually a "jurisdictional" dispute subject to the procedures specified in Article IV(F), rather than those in Article VI.
 
 
 4
 In February of 1990, Berry subcontracted the installation of storm drains and sewer, water, and gas lines at two project sites to L & M, who is not a party to any labor agreement with the Laborers.[5] Pursuant to its own agreement with Pipe Trades, L & M assigned the work to members of Plumbers and Pipefitters Local 398 ("Pipefitters"). When a representative of the Laborers observed Pipe Trades members working at one of the sites, he claimed the work for the Laborers and requested that L & M sign an agreement with the Laborers. L & M rejected the Laborers' demands and suggested that the matter be resolved by a hearing before the National Labor Relations Board ("NLRB") pursuant to § 10(k) of the National Labor Relations Act ("Act"), 29 U.S.C. § 160(k). The Laborers disagreed.
 
 
 5
 In March of 1990, the Laborers filed two grievances charging that Berry had violated the subcontracting clause of the CBA. Berry refused to arbitrate the grievances, contending that they were jurisdictional and thus not subject to arbitration. Pipe Trades subsequently threatened to use its "full complement of economic weapons" if the disputed work was reassigned. On May 8, 1990, Berry and L & M filed an unfair labor practice charge with the NLRB contending that Pipe Trades had violated § 8(b)(4)(D) of the Act by threatening Berry and L & M with economic action over the disputed work.
 
 
 6
 Pursuant to the Act, the NLRB scheduled a § 10(k) hearing to determine which union was entitled to the work. The Laborers filed a motion to quash the hearing on the grounds that the grievance did not involve a jurisdictional dispute. The NLRB denied the motion, finding that "competing claims ... ha[d] been made to L & M Plumbing by the Laborers Union and by the Pipefitters Union regarding the disputed work." Based on a variety of factors, including the Pipefitters/L & M agreement, L & M's historical preference for assigning such work to Pipefitters, the industry practice of assigning such work to Pipefitters, and the special skills of Pipefitters members, the NLRB concluded on February 28, 1991 that "[e]mployees represented by the Pipefitters are entitled to perform the work in dispute." 301 N.L.R.B. No. 150, slip op. at 9.
 
 
 7
 Meanwhile, the Laborers had filed a complaint in district court on May 10, 1990, requesting specific performance of the agreement to arbitrate subcontracting violations. Both L & M and Pipe Trades intervened. Upon cross-motions for summary judgment, the district court held that the dispute was not jurisdictional:
 
 
 8
 [T]he NLRB determined who had the better claim between Pipe Trades Union and the Laborers Union to the plumbing work assignment, and not the merits of the claim by the Laborers Union against Berry.... Because an arbitrator will only determine whether Berry breached the Agreement and is precluded from finding that the assignment of work more properly belongs to the Laborers Union, the NLRB decision does not preclude the Laborers Union from asserting its contractual remedies for breach of contract.... [T]he claim for the breach of the subcontracting clause ... is not a "disguised" jurisdictional dispute.
 
 
 9
 The court granted the Laborers' motion for summary judgment, denied Berry's motion, and ordered Berry to proceed with arbitration. This timely appeal followed.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 10
 We have jurisdiction over this dispute pursuant to 28 U.S.C. § 1291. A grant of summary judgment is reviewed de novo. FDIC v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). "The evidence must be viewed in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact for trial, and whether the district court correctly applied the relevant substantive law." Id. Determinations of arbitrability are also subject to de novo review. Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992).
 
 DISCUSSION
 
 11
 This case arose because of the different ways in which the parties characterize the underlying dispute. Appellants contend that the heart of the dispute is over which union, between the Laborers and Pipe Trades, is entitled to perform the actual work. Thus characterized, the dispute is a "jurisdictional" one which must be resolved through the procedures in Article IV.[6] The Laborers counter that the dispute centers not on L & M's award of the work to Pipe Trades, but rather on Berry's initial violation of Article V(D) by subcontracting to a nonsignatory employer. While the NLRB resolved the question of which union was entitled to perform L & M's work, the Laborers' initial contract dispute with Berry was not addressed. The Laborers characterize the dispute solely as involving the subcontracting clause, and hence subject to the arbitration procedures in Article VI.
 
 
 12
 The parties would have this court determine arbitrability by deeming the underlying dispute to be either contractual or jurisdictional in nature. This we decline to do. The proper inquiry for this court is not whether the underlying dispute is arbitrable in and of itself; rather, we must ask whether the overall dispute, which encompasses the disagreement over the nature of the underlying dispute, is arbitrable under the terms of the CBA. For the reasons explained below, we hold that an arbitrator is authorized by the CBA to address these questions.
 
 
 13
 Our courts have long favored arbitration of labor disputes.
 
 
 14
 [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
 
 
 15
 AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). This presumption is balanced, however, by the principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id., 475 U.S. at 648, 106 S.Ct. at 1418. In general, the resolution of whether a dispute is subject to arbitration is a task for the courts. New England Mechanical, Inc. v. Laborers Local Union 294, 909 F.2d 1339, 1344 (9th Cir.1990). "However, the courts will be divested of that authority if the parties 'clearly and unmistakably provide' that an arbitrator is to decide whether a dispute is subject to arbitration." Id. at 1345 (quoting AT & T Technologies, 475 U.S. at 649, 106 S.Ct. at 1418).
 
 
 16
 We have acknowledged that the CBA explicitly may grant this authority to the arbitrator. See id. But we have also held that the power to determine arbitrability may be granted through the use of a broad arbitration clause. For example, in Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co., 832 F.2d 507 (9th Cir.1987), we held that an arbitration clause governing "any grievance or controversy affecting the mutual relations" of the parties empowered the arbitrator to decide whether the CBA had been terminated. Conversely, we have held that an arbitration clause which applied only to disputes over "application" of the CBA was limited to disputes over the construction of substantive provisions of the agreement, and did not empower an arbitrator to decide the factual question of whether the agreement had been terminated. Northern California Newspaper Guild Local 52 v. Sacramento Union, 856 F.2d 1381, 1383 (9th Cir.1988).
 
 
 17
 The language of the CBA suggests that the present dispute is arbitrable on its face. While establishing separate procedures for the resolution of jurisdictional disputes, Article IV makes clear that all grievances or disputes arising "over the interpretation or application of the terms " of the CBA are to be settled under the standard grievance procedures of Article VI. Furthermore, the subcontracting article provides that "[a]ny dispute involving this Article " must be resolved under these grievance procedures.
 
 
 18
 These are broad rather than narrow arbitration provisions. The present dispute comes within both of them: (1) it arose between the contracting parties over an "interpretation or application" of the agreement, i.e., whether the Article VI or Article IV(F) grievance procedures apply; and (2) it "involves" an alleged violation of the Article V(D) subcontracting provision. We are presented with a dispute over the interpretation of the CBA's substantive provision, and Article IV subjects such disputes to arbitration. Thus, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation Co., 363 U.S. at 582-83, 80 S.Ct. at 1353. Under the terms of the CBA it was for the arbitrator to decide, in the first instance, whether the parties presented an arbitrable contractual dispute or a nonarbitrable jurisdictional one.
 
 
 19
 Our conclusion is compelled by this circuit's two most recent cases on this subject. In Frederick Meiswinkel, Inc. v. Laborers Union Local 261, 744 F.2d 1374, 1375-76 (9th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1394, 84 L.Ed.2d 783 (1985), we construed an arbitration clause which covered "[a]ny dispute concerning the interpretation or application of this Agreement, other than a jurisdictional dispute." While finding the arbitrator's award implausible, we made it clear that arbitration of the initial dispute was proper.
 
 
 20
 We recognize that under the collective bargaining agreement, the arbitrator had the authority to decide whether the dispute was in fact jurisdictional. This would have been an act of legitimate contract interpretation under [the arbitration clause quoted above].
 
 
 21
 Id. at 1377. We reached the same result in New England Mechanical, where we held that the arbitrator "was empowered to interpret what actions the parties intended to cover when they used the term 'jurisdictional dispute.' " 909 F.2d at 1345. Similarly, the arbitrator is entitled to decide whether the present dispute is of a type covered by the "jurisdictional" exclusion; that decision is "an act of legitimate contract interpretation" under Article IV(A) of the CBA. We express no opinion as to the correct characterization of the underlying dispute; that is for the arbitrator alone to decide.
 
 CONCLUSION
 
 22
 Under the authority of Meiswinkel and New England Mechanical, the arbitrability of the underlying dispute between the Laborers and Berry was itself a proper issue for an arbitrator to decide. The district court's grant of summary judgment in favor of the Laborers is AFFIRMED. The parties shall proceed to arbitration.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Marion J. Callister, Senior United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 Article VI creates a three-stage dispute resolution process involving: (1) attempted on-the-job adjustment by the individual employee or by the job steward's business agent or special representative; (2) attempted resolution by the contractor's Labor Relations Representative, the contractor, and the union representative; and (3) arbitration
 
 
 [2]
 Although not defined in the CBA, "jurisdictional disputes" are commonly described as disputes "between two or more groups of employees over which is entitled to do certain work for an employer." NLRB v. Radio & Television Broadcast Eng'rs Union, 364 U.S. 573, 579, 81 S.Ct. 330, 334, 5 L.Ed.2d 302 (1961)
 
 
 [3]
 The relevant portion of Article IV(F) provides that:
 Jurisdictional disputes shall be settled by the Unions themselves. If not settled, then the dispute shall be submitted to the International Presidents of the Unions involved in the dispute for determination.
 
 
 [4]
 Article V(D) provides that:
 Neither the contractor nor any of his subcontractors shall subcontract any work to be done at the site of the construction, alteration, painting or repair of a building, structure or other work coming within the jurisdiction of the Union ... except to a person, firm or corporation party to an appropriate current labor agreement with the Union....
 
 
 [5]
 On its face, Berry's action violated the subcontracting limitations in Article V(D)
 
 
 [6]
 Appellants also claim that any arbitration decision in favor of the Laborers would conflict with the NLRB's award of the work to Pipe Trades