**McKESSON CORPORATION, dba: McKesson Drug Company, Plaintiff–Appellant,**

v.

**LOCAL 150 IBT, Defendant–Appellee.**

**No. 91–15605.**

United States Court of Appeals, Ninth Circuit.

Submitted May 15, 1992.*

Decided July 20, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

John S. Schauer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiff-appellant.

Neil Bodine, Bodine & Livingston, Sacramento, Cal., for defendant-appellee.

Before: FERGUSON, REINHARDT, and KOZINSKI, Circuit Judges.

REINHARDT, Circuit Judge:

The facts of this case are relatively simple. On March 10, 1988, Holly Hill Looman was put on full disability as the result of an injury she received while working at McKesson Corporation. In April 1988, she was released for light duty by her doctor, and, on October 19 of that year, she was offered a light duty assignment by McKesson. By that time, however, she was pregnant and had been placed on pregnancy disability until six weeks postpartum. Unbeknownst to Looman, McKesson contacted her obstetrician and obtained a medical release for her to perform light duty. As she was never informed of this release, she did not perform her assignments, and on October 21, McKesson discharged her. Looman filed a grievance, and was reinstated on January 27, 1989, more than three months after her termination. Her reinstatement was contingent, however, upon her receipt of an unconditional medical release from her doctor. As she did not obtain such a release, she performed no further work for McKesson. On March 13, 1989, Looman was discharged pursuant to a provision of the collective bargaining agreement that states that "[s]eniority shall be considered broken and employment terminated by ... [a]bsence or layoff from work in excess of twelve (12) consecutive months." As of that date, she had not worked for 12 months and 3 days.

The defendant union filed a grievance on behalf of Looman. The grievance was submitted to arbitration and, five months later, the arbitrator rendered an award in her favor, finding that the three months attributable to the employer's wrongful discharge should not be included within the period of absence for purposes of the termination provision and that therefore Loo-

man had not been absent from work twelve consecutive months within the meaning of the provision. McKesson then brought an action in the district court seeking to vacate the arbitration award under § 301(a) of the Labor and Management Relations Act. The district court granted summary judgment in favor of the union and this appeal ensued. We affirm.

■ McKesson raises two issues on appeal. Its first contention is that the arbitrator's award was unfaithful to the contract. Courts must accord great deference to an arbitrator's interpretation of a collective bargaining agreement and ordinarily may reverse only if his award does not "draw its essence from the collective bargaining agreement" so that he is dispensing "his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *accord Federated Dep't Stores v. United Food & Comm'l Workers Union*, 901 F.2d 1494, 1496 (9th Cir.1990). As we have stated, " '[i]f, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.' " *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1209 (9th Cir.1989) (en banc) (plurality) (quoting *Sheet Metal Workers v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir.1988) (citations omitted)).

■ The employer contends that the term "absence from work" has only one possible meaning, that it refers unambiguously to *any* failure of an employee to appear for work. We disagree. Terms used in industrial bargaining seldom have such inflexibility of meaning. *See United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 580–81, 80 S.Ct. 1347, 1351–52, 4 L.Ed.2d 1409 (1960). "Absence from work" is precisely the sort of phrase the meaning of which may vary depending on context and prior understandings, and the interpretation of which is most appropriately left to the arbitrator.

In fact, contrary to McKesson's assertion, it is far from clear that, as used in the collective bargaining agreement, the term "absence from work" is applicable to the disputed three month period. It would certainly be reasonable to construe the term as not applying to a failure attributable to a wrongful or unlawful action on the part of the employer. An employee who is barred from entering a plant is not ordinarily marked "absent". Yet the employer's construction of the term "absence from work" would permit it to discharge an employee whom it has wrongfully prevented from entering the plant: under McKesson's theory, if an employer without justification told an employee that he was barred from the plant for 12 months, the employer could wait until the 12 months had elapsed and then discharge the employee for absence from work. The arbitrator's construction of the term avoids such an absurd reading of the collective bargaining agreement. His answer is well within the range of reason and we will not overturn it.[1]

■ McKesson's other attack on the award is that the arbitrator's failure to render a decision within sixty days of submission of the grievance, as provided for in the collective bargaining agreement, ren-

---

1. McKesson also contends that the arbitrator was unfaithful to the contract because he interpreted the phrase "in light of" the good cause requirements contained elsewhere in the contract despite the express provision in the contract that those good cause requirements were not applicable to the termination of an employee. However, the arbitrator does not appear to have applied the good cause requirements but rather appears only to have used them to divine the meaning of the disputed term. This was not improper, *see, e.g.,* Cal.Civ.Code § 1641 ("The whole of a contract is to be taken together so as to give effect to every part, if reasonable practicable, each clause helping to interpret the other."), and does not serve as a basis for setting aside his award, *see Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.").

**834**

dered the award void. We disagree. In the absence of an express agreement to the contrary, procedural questions are submitted to the arbitrator, either explicitly or implicitly, along with the merits of the dispute. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987) ("[W]hen the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator."); *Pack Concrete, Inc. v. Cunningham,* 866 F.2d 283, 285 (9th Cir.1989) (treating a procedural issue not specifically submitted to the arbitrator as necessarily before him and affirming his implicit resolution of the issue). The question of the authority of the arbitrator to issue an award after the sixty day period involves just such a procedural matter. McKesson's contention that the time limit is jurisdictional in nature and may not be submitted to the arbitrator is in error. Courts have uniformly held that limitations on the time in which an arbitrator may render an award are procedural not jurisdictional. *See West Rock Lodge No. 2120 v. Geometric Tool Co.,* 406 F.2d 284, 286 (2d Cir.1968); *see also Gunn v. Veterans Admin. Med. Center,* 892 F.2d 1036, 1038 (Fed.Cir.1990); *In the Matter of Arbitration No. AAA13–161–0511–85 (India v. Cargill Inc.),* 867 F.2d 130, 134 (2d Cir.1989); *Hill v. Norfolk & W. Ry. Co.,* 814 F.2d 1192, 1199 (7th Cir.1987). We agree.

Here, the question of the authority of the arbitrator to issue an untimely award was implicitly submitted to the arbitrator. Because an arbitrator has no obligation to explain the basis of his decision, *see Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361; *Stead Motors,* 886 F.2d at 1206, he need not make an express finding on every procedural matter that bears on his award. Faced with an award that contains no discussion of a procedural issue that has, either explicitly or implicitly, been submitted to the arbitrator, we will presume that the arbitrator's decision to issue the award carries with it whatever procedural ruling was necessary to permit its issuance. The question for the court then is whether such a ruling represents a "plausible interpretation" of the contract. *See Stead Motors,* 886 F.2d at 1207.

The arbitrator's implicit finding that he had the authority to issue an award after 60 days represents a plausible construction of the collective bargaining agreement. An arbitrator could quite reasonably have concluded that the time limit was precatory and did not limit his authority to issue an award after the 60 day period had run. *See West Rock Lodge,* 406 F.2d at 286 ("[W]e believe it to be a better rule that any limitation upon the time in which an arbitrator can render his award [is] a directory limitation, not a mandatory one."). In addition, it is undisputed that McKesson failed to object to the delay while the matter was still pending before the arbitrator. Courts frequently have found, in the arbitration context, that a non-objecting party waives its right to a timely ruling and that an untimely award is therefore valid. *See, e.g. Gunn,* 892 F.2d at 1038; *Cargill,* 867 F.2d at 134; *Hill,* 814 F.2d at 1199. We find nothing improper about an arbitrator rather than a court making such a finding; nor have the parties pointed to any unique clause in the present contract that would render such a finding beyond the arbitrator's authority. Therefore, as the agreement is susceptible to a construction that allows issuance of an arbitration award five months after the issues are submitted, either on the ground that the time limit is merely precatory or on the ground that McKesson waived its right to object to the delay, we uphold the arbitrator's decision to issue that award.

In sum, the arbitrator's award represents a plausible construction of the contract; he did not exceed his authority. The district court's order entering summary judgment in favor of the union is

AFFIRMED.