**CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, Plaintiff–Appellee,**

v.

**ZCON BUILDERS, individually and d/b/a Sharon Hill Corporation; Sharon Hill Corporation, Defendants–Appellants.**

No. 95–15124.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1996.

Decided Sept. 17, 1996.

---

David J. Bowie, Walnut Creek, California, for defendants-appellants.

M. Catherine Jones, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for plaintiff-appellee.

Before: PREGERSON and TROTT, Circuit Judges, and WINMILL, District Judge.*

Opinion by Judge WINMILL; Dissent by Judge PREGERSON.

WINMILL, District Judge:

### Introduction

Appellant Sharon Hill Corp. appeals from a decision of the U.S. District Court, Northern District of California, granting summary judgment on a petition to confirm an arbitration award. The arbitration was undertaken pursuant to a collective bargaining agreement between Zcon Builders and Appellee Carpenters 46 Northern California Counties Conference Board ("Carpenters"). Sharon Hill argues that it was never given notice of the arbitration proceedings and is not the alter ego of Zcon Builders, and thus the arbitration award cannot be binding upon it. We reverse and remand.

### Facts and Prior Proceedings

Zcon Builders is a licensed contractor, and a member of the Associated General Contractors of California, Inc. By virtue of its membership, Zcon became a signatory to the Carpenters Master Agreement (hereinafter the "Collective Bargaining Agreement" or "Agreement"). Zcon was incorporated in California in 1982, with Dennis Keating and Charles Zakskorn as its only shareholders and directors. Zcon's only business has been general construction in California. Sharon Hill was incorporated in Nevada in 1989, and was primarily engaged in property development in Nevada. Zakskorn and Keating collectively owned 50% of the outstanding stock, with the balance owned by unrelated third parties. Sharon Hill was not a signatory to the Collective Bargaining Agreement, nor was it a member of a signatory employer association.

On April 6, 1993, the Carpenters filed a grievance which sought full compliance with the Agreement, payment of wages and fringe benefits, and an audit of both Zcon and Sharon Hill. Notice of the grievance and the hearing was sent to "Zcon Builders dba Sharon Corp. dba Windwood, Inc." at the address where both Zcon and Sharon Hill were headquartered. The notice was sent to Keating, who was the registered agent for service of process for both Zcon and Sharon Hill. Keating attended the hearing, but argued that he was appearing only on behalf of Zcon.[1] An arbitration award was entered against Zcon and Sharon Hill. Thereafter, the Carpenters filed a petition to confirm the award in the district court, as well as a motion for summary judgment, which the court granted. Sharon Hill appeals the district court's grant of summary judgment.[2]

### Discussion

#### 1. Notice of the grievance proceeding

■ Sharon Hill first argues that it did not receive adequate notice of the arbitration. We disagree. The arbitrator did not directly address the issue of the notice provided to Sharon Hill. The issue was, however, clearly raised before the arbitrator, and the arbitrator's decision implicitly encom-

* The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

1. Windwood had previously been dismissed as a party.

2. Only Sharon Hill is before this Court on appeal. Zcon did not appeal the district court's grant of summary judgment.

passes a finding that Sharon Hill had received at least constructive notice of the grievance and hearing. In *McKesson Corp. v. Local 150 IBT*, 969 F.2d 831 (9th Cir.1992), this Court considered whether a procedural issue, implicitly submitted to the arbitrator, but not expressly decided by the arbitrator, could stand. The court stated:

Because an arbitrator has no obligation to explain the basis of his decision, he need not make an express finding on every procedural matter that bears on his award. Faced with an award that contains no discussion of a procedural issue that has, either explicitly or implicitly, been submitted to the arbitrator, we will presume that the arbitrator's decision to issue the award carries with it whatever procedural ruling was necessary to permit its issuance.

*Id.* at 834. Although the arbitrator did not specifically address the issue, *McKesson* allows us to presume that he made the necessary decision in order to issue the award.

We next consider the district court's treatment of the notice issue during the confirmation proceedings. At the hearing before the district court, Sharon Hill argued the issue of notice almost exclusively. In announcing its decision, however, the district court did not specifically address that issue. Instead, the court concluded that it was required by our decision in *Gateway Structures v. Carpenters 46 N. Cal. Counties Conf. Bd.*, 779 F.2d 485, 489 (9th Cir.1985), to give broad deference to the arbitrator's findings on all issues. E.R. at 281.

■ Since the Labor Management Relations Act of 1947 was codified in 29 U.S.C. § 185, the courts have fashioned a policy of extremely limited review of an arbitrator's decision. This is a direct consequence of the fundamental principles surrounding the concept of arbitration. The Act reflects a "decided preference for private settlement of labor disputes without the intervention of government...." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). The *Misco* case also noted that were the courts to readily intervene, "the speedy resolution of grievances by private mechanisms would be greatly undermined." *Id.* at 38,

108 S.Ct. at 371. In furtherance of these principles, the courts have adopted a policy of deference to the arbitrator's factual and legal findings. This Circuit has held that "[j]udicial scrutiny of an arbitrator's decision is extremely limited. The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the [collective bargaining agreement.]." *Sheet Metal Workers Int'l Assoc. v. Arizona Mechanical & Stainless, Inc.* 863 F.2d 647, 653 (9th Cir.1988).

■ In addition to the benefit of limited review, labor arbitrations do not need to provide the same procedural protections as do judicial proceedings. However, an arbitrator must grant the parties a fundamentally fair hearing. *Sunshine Mining Co. v. United Steelworkers, Local 5089*, 823 F.2d 1289, 1295 (9th Cir.1987). A hearing is fundamentally fair if the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator—are met. *Id.* (citing *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir.1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965)). Although deference must be given to an arbitrator's decisions concerning procedural issues, it is generally recognized that the courts may consider a claim that a party to an arbitration has been denied a fundamentally fair hearing. *Bowles Financial Group v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012–13 (10th Cir.1994). *See also Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir.1990) ("In reviewing the district court's vacatur, we posit the ... question ... whether the arbitration proceedings were fundamentally unfair."); *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985) ("Vacatur is appropriate only when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" (citation omitted)); *National Post Office Mailhandlers v. United States Postal Service*, 751 F.2d 834, 841 (6th Cir.1985) ("[T]he standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing.");

*Hall v. Eastern Air Lines, Inc.,* 511 F.2d 663, 663–64 (5th Cir.1975) ("[R]eview is not absolutely foreclosed where petitioner alleges a denial of fundamental due process.").

■ Thus, we consider whether the notice given to Sharon Hill was so inadequate as to deny it a fundamentally fair hearing. We hold that it was not. The Notice of Grievance and hearing notice were addressed to "Zcon Builders dba Sharon Hill Corp. dba Windwood, Inc," and were sent to Dennis Keating at the physical address where both ccrporations maintained their offices. Keating was the registered agent for service of process for both Zcon and Sharon Hill, and was an officer and shareholder in both corporations. The manner in which notice was given appears to comport with a "Consent to Service of Process" form which was filed as part of the incorporation process for Sharon Hill, and which requested that service of process be sent to Sharon Hill through Keating "c/o Zcon Builders." Finally, the Notice of Grievance unambiguously indicated that Sharon Hill was a focus of the arbitration, since it provided that the amount of back pay and fringe benefits would "be determined by an [a]udit [sic] of Zcon Builder, Sharon Hill and Windwood." We conclude that the notice given Sharon Hill was more than sufficient to satisfy any requirement of fairness or due process.

■ Because we find that Sharon Hill received adequate notice, we cannot say that the procedural fairness of the hearing, or the integrity of the decision, has been seriously called into question. Therefore, we hold that the district court properly gave deference to the arbitrator's implicit decision on the notice issue.

### 2. *Arbitrability*

■ Sharon Hill also contends that the district court erred in deferring to the arbitrator's decision that Sharon Hill, as the alter ego of Zcon, was subject to the arbitration provisions of Zcon's Collective Bargaining Agreement with the Carpenters. Specifically, Sharon Hill argues that such issues of arbitrability are for the courts, so that no deference should have been given to the arbi-

trator's decision. We agree with the premise that arbitrability, under most circumstances, must be resolved by the court, and we conclude that the facts of this case do not warrant a departure from that general rule.

Thirty-six years ago, the United States Supreme Court decided a series of cases now known as the Steelworkers Trilogy: *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Steelworkers Trilogy provided four fundamental principles to the field of labor law, the first two of which are directly applicable to the instant case. First, the Steelworkers Trilogy established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf, supra,* at 582, 80 S.Ct. at 1353. A corollary of that principle is that the arbitrator only derives his or her authority to resolve the dispute because the parties have so agreed in advance. The second principle is that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 582–83, 80 S.Ct. at 1352–53. This second principle was reaffirmed in *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), when the Court stated that "the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649, 106 S.Ct. at 1418.

The effect of these principles in this case is clear: Sharon Hill can only be required to submit to arbitration if it is bound by the terms of the Agreement which contain the arbitration procedure. The Carpenters contend that Sharon Hill, although not a signatory to the Agreement, is nevertheless bound by its terms because it is an alter ego of Zcon, which did sign the Agreement. However, that issue of arbitrability is clearly re-

served for the Courts, and is not, itself, a proper subject of arbitration. As the Supreme Court stated in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964), "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining does in fact create such a duty." Thus, the district court erred in deferring to the arbitrator's decision that Sharon Hill was bound by the mandatory arbitration provisions of the Agreement.[3]

■ The Carpenters argue, however, that Sharon Hill, by virtue of Keating's conduct at the arbitration hearing, consented to allow the arbitrator to decide the alter ego issue. In *George Day Const. v. United Brotherhood of Carpenters and Joiners, Local 354,* 722 F.2d 1471, 1475 (9th Cir.1984), we held that "consent to grant the arbitrator such authority may be implied from the conduct of the parties in the arbitration setting." The rationale behind our holding was that a claimant "may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator to act." *George Day,* 722 F.2d at 1475 (citing *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir. 1964)). In *George Day,* the merits of the dispute along with the question of jurisdiction were addressed by the parties during the arbitration hearing, and the entire controversy was thereafter submitted to the arbitrator for decision. The court examined the record for any indication that the employer reserved the question of arbitrability for judicial determination, and found none. The court also concluded that

[h]ad the employer objected to the arbitrator's authority, refused to argue the arbitrability issue before him, and proceeded to the merits of the grievance, then, clearly the arbitrability question would have been

preserved for independent judicial scrutiny. The same result could be achieved by making an objection as to jurisdiction and an express reservation of the question on the record. However, where, as here, the objection is raised, the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability.

*Id.* at 1475. The court then found that "the employer, by conduct evinced clearly its intent to allow the arbitrator to decide not only the merits of the dispute but also the question of arbitrability." *Id.*

The Carpenters argue that *George Day* compels a finding that Keating, by his conduct, agreed to submit the alter ego issue to the arbitrator. The record, however, does not support such an argument. Although Keating appeared at the arbitration, he stressed repeatedly that he was appearing on behalf of Zcon only, and that Sharon Hill was not appearing because it had not been given proper notice.

The *George Day* decision instructs us to look for conduct which "evinced clearly" Keating's intent to allow the arbitrator to decide the arbitrability issue. We find none. The final question asked of Keating during the hearing is indicative of his intent throughout:

MR. KNIGHT: Uh-hum. And apparently you need a determination on the dba of Zcon.

MR. KEATING: That's a major issue because it seems to me that since Sharon Hill really is not here to represent itself and to bring whatever evidence they need to bring forward, that's an issue that should

---

3. The district court, in announcing its decision to defer to the arbitrator's decision on arbitrability, indicated its reliance on our decision in *Gateway Structures,* 779 F.2d at 489 (9th Cir.1985). However, in *Arizona Mechanical & Stainless,* 863 F.2d at 653, n. 6 (9th Cir.1988), we distinguished the *Gateway* decision, and limited its holding to the unique circumstances where only the signatory party was before us on appeal and the nonsignatory party did not challenge the arbitrator's findings. Here the opposite is true. Sharon Hill, the nonsignatory party, has challenged the arbitrator's findings while Zcon, the signatory party, is not before us on appeal. Because this case does not present the unique circumstances and distinguishing characteristics of *Gateway,* the district court's reliance on that case was misplaced.

not be determined right now. If you would pre-notice Sharon Hill—

By this statement, Keating advised the arbitrator that Sharon Hill was not at the hearing to present evidence on the arbitrability issue, and that the issue "should not be determined right now." This is a far cry from the position taken by the employer in *George Day,* and is clearly insufficient to establish assent to arbitration by conduct.[4] Indeed, Keating could not have been much clearer in stating that the arbitrator should not decide the arbitrability issue. We therefore conclude that Sharon Hill did not, by its conduct, agree to submit the alter ego issue to the arbitrator, and remand to the district court for a de novo determination whether Sharon Hill was in fact the alter ego of Zcon or otherwise bound by the terms of the Collective Bargaining Agreement.

### 3. Preservation of Defenses

■ The Carpenters also argue that Sharon Hill failed to file a motion to vacate, modify or correct the arbitration award, and thus the defenses it asserts are deemed waived, as the statute of limitations has now run. In *Arizona Mechanical, supra,* this Court stated that "where [a] party did not move to vacate arbitrator's award, all defenses *except for 'arbitrability'* are time barred." 863 F.2d at 651 (emphasis supplied). As we noted above, the alter ego issue is considered an issue of arbitrability. *Id.* at 653. Thus, we conclude that Sharon Hill's failure to move to vacate the arbitrator's decision does not bar it from challenging the decision in subsequent enforcement proceedings.

### Conclusion

Because the record before us clearly demonstrates that Sharon Hill received adequate notice of the arbitration proceedings, we hold that it was not denied a fundamentally fair hearing. However, the issue of arbitrability actually decided by the arbitrator is normally reserved for the courts, and nothing about

this case warrants a departure from that general principle. Accordingly, the lower court's grant of summary judgment to the Carpenters is REVERSED. We REMAND to the district court for proceedings in accordance with this opinion.

PREGERSON, Circuit Judge, dissenting:

The majority recognizes that the Management Labor Relations Act, 29 U.S.C. § 185, evinces a strong federal policy favoring "private settlement of labor disputes without intervention of government," and that, if courts readily intervene, "the speedy resolution of grievances by private mechanisms would be greatly undermined." *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 37, 38, 108 S.Ct. 364, 370, 371, 98 L.Ed.2d 286 (1987). Yet, the majority refuses to confirm the arbitrator's award in this case and, in the process, creates a conflict with our decision in *George Day Constr. Co., Inc. v. United Broth. of Carpenters and Joiners of America, Local 354,* 722 F.2d 1471 (1984). I therefore dissent.

The majority believes that the labor arbitrator in this case exceeded his authority in issuing an arbitration award against Sharon Hill Corporation ("Sharon Hill"), an employer that never signed a collective bargaining agreement. The arbitrator found that Sharon Hill was the alter ego of Zcon Builders ("Zcon"), the employer that *did* sign the collective bargaining agreement. Apparently, both companies operate out of the same address and have the same responsible managing officer and agent for service of process.

The issue in this case is whether the arbitrator had the authority to decide whether Sharon Hill was the alter ego of Zcon, or whether this issue should have been decided in the first instance by the courts. I believe the district court properly deferred to the arbitrator's award in this case because Sharon Hill consented to having the arbitrator

---

4. Our conclusion is not undermined by the fact that Sharon Hill refused to participate in the hearing, not because the arbitrator lacked jurisdiction, but because of a mistaken belief that it had not received proper notice of the arbitration. Our only inquiry is whether Sharon Hill's actions

"evinced clearly" its consent to have the arbitrator resolve the alter ego question. *George Day,* 722 F.2d at 1475. Its refusal to participate in the arbitration hearing, for whatever reason, cannot be said to manifest such consent.

decide the alter ego question at the arbitration hearing.

## I

I agree with the majority that, generally, courts decide whether a dispute is arbitrable—what courts refer to as the question of arbitrability. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). But both the Supreme Court and this court have recognized important exceptions to the general rule that courts decide arbitrability.

An arbitrator will decide arbitrability where the parties " 'clearly and unmistakably' " divest the courts of their jurisdiction. *New England Mechanical, Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir.1990) (quoting *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1418–19). We have construed broad arbitration clauses in collective bargaining agreements as granting arbitrators authority to decide arbitrability in the first instance. *Id.* at 1345. *See, e.g., Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507, 510–511 (9th Cir.1987) (construing arbitration clause that covered "any grievance or controversy" as granting arbitrator authority to resolve arbitrability issue).[1]

We also have recognized that an employer that never signed a collective bargaining agreement will be bound by an arbitrator's award in the following situations: (1) where the nonsignatory adopts the collective bargaining agreement's arbitration clause, *see, e.g., Sheet Metal Workers Intern. Ass'n, Local No. 359, AFL–CIO v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 651 (9th Cir.1988); (2) where the nonsignatory is the alter ego or successor of the employer that signed the collective bargaining agreement, *see, e.g., New England Mechanical*, 909 F.2d at 1343; *or* (3) where the nonsignatory consents at an arbitration hearing to having the

arbitrator resolve a dispute without expressly objecting to the arbitrator's jurisdiction and without reserving the arbitrability question for the courts, *see, e.g., George Day*, 722 F.2d at 1475.

The courts must determine whether any of the exceptions to the general rule—that courts decide arbitrability—applies to a particular case. *Arizona Mechanical*, 863 F.2d at 653. But in deciding whether any of the exceptions apply, a court must "avoid becoming entangled in the merits of a labor dispute under the guise of deciding arbitrability." *AT & T*, 475 U.S. at 647, 106 S.Ct. at 1417. And if a court determines that any of the exceptions apply, the court is required to defer to the arbitrator's award. *See, e.g., George Day*, 722 F.2d at 1477 ("th[e] deferential standard of review applies when parties have submitted legal questions to the arbitrator 'even if the question is one that is ordinarily for the courts to decide' ").

## II

In this case, the district court confirmed the arbitration award without determining whether any of the three exceptions for nonsignatories applied. The union, however, argues that deference to the arbitrator's award is still proper under *George Day* because Sharon Hill voluntarily submitted the alter ego question to the arbitrator without objecting to the arbitrator's authority and without reserving the arbitrability question for the courts. The majority rejects the union's argument and concludes that Sharon Hill never agreed to having the arbitrator decide arbitrability. The majority's conclusion, however, is not supported by *George Day* nor the record in this case.

In *George Day*, an employer challenged an arbitration award on the grounds that it had never signed a collective bargaining agreement. We held that merely objecting to arbitrability does not preserve the arbitrability question for the courts and that consent

---

1. We have a broad arbitration clause in this case. Section 51 provides in relevant part that "[a]ny dispute concerning any application or interpretation of this Agreement shall be subject to the" grievance and arbitration procedures set forth in the agreement. In addition, subsection (e) of

paragraph (5) specifically provides that "[a]ny grievance involving an individual employer not a member of any of the signatory associations shall be submitted directly to the Arbitrator unless the individual employer agrees to submit the matter to the Board of Adjustment."

to arbitrate an issue may be *implied* from the conduct of a nonsignatory employer at an arbitration hearing. 722 F.2d at 1475. As we explained:

> Had the employer objected to the arbitrator's authority, refused to argue the arbitrability issue before him, and proceeded to the merits of the grievance, then, clearly the arbitrability question would have been preserved for independent judicial scrutiny. The same result could be achieved by making an objection as to jurisdiction and an express reservation of the question on the record. However, *where, as here, the objection is raised,* the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, *including the question of arbitrability.*

*Id.* (emphasis added).

The majority attempts to distinguish *George Day* when it states that "the court [in *George Day* ] examined the record for any indication that the employer reserved the question of arbitrability for judicial determination and found none." But we did not say this in *George Day.* In fact, we specifically found in *George Day* that the employer had objected to arbitrating the dispute at the beginning of the arbitration hearing. 722 F.2d at 1474, 1475. The reason we held that the employer's objection in *George Day* was insufficient to preserve the arbitrability question for the courts was that the employer, like Keating in this case, submitted the arbitrability question to the arbitrator *without* expressly reserving the arbitrability question for the courts. Thus, there is no question that the disposition in this case is controlled by *George Day.*

Examining the transcript of the arbitration hearing in this case, it is clear that Sharon Hill did not do what was required under *George Day* to preserve the arbitrability question for the courts. Keating, who was the responsible managing officer and the agent for service of process for both Sharon Hill and Zcon, appeared at the arbitration hearing and answered questions about the relationship between Sharon Hill and Zcon.

Keating did *not* object to the arbitrator's authority or jurisdiction in deciding the alter ego question. Keating also did *not* explicitly reserve the arbitrability question for the courts. Keating simply said that Sharon Hill was not "really" present "to represent itself and to bring whatever evidence they need to bring forward" because Sharon Hill had *not been properly notified* of the arbitration hearing.

The majority, however, concludes that what Keating said at the arbitration hearing was sufficient to preserve the arbitrability question for the courts under *George Day.* According to the majority, Keating's objection to notice indicated that he did not intend to submit the alter ego question to the arbitrator.

But the fact that Keating challenged the notice Sharon Hill received does *not* mean that Keating intended to preserve the arbitrability question for the courts. Challenging notice is *not* the same as challenging the authority of the arbitrator to decide arbitrability. The question of notice raises due process considerations, i.e. whether Sharon Hill received a fair hearing. The question of arbitrability goes to the jurisdiction of the arbitrator in resolving the labor dispute. Only by "object[ing] to arbitration on *jurisdictional* grounds ... [does] the question of ... arbitrability come[ ] before the court in the first instance." *George Day,* 722 F.2d at 1476 (emphasis added). *See also Arizona Mechanical,* 863 F.2d at 649 (noting that the employer participated in the grievance and arbitration procedures at all times stating that it was not bound by the collective bargaining agreement because he was not a signatory).

There is no way that the transcript of the arbitration hearing in this case can be read to suggest that Keating objected to arbitration on *jurisdictional* grounds. At no point during the hearing did Keating say that Sharon Hill was not a party to the collective bargaining agreement or that Sharon Hill was not required to arbitrate the alter ego dispute. Because Keating did not object to the authority or jurisdiction of the arbitrator in deciding the alter ego question, *George Day* compels the conclusion that Keating, as

Sharon Hill's responsible managing officer and agent for service of process, consented to having the arbitrator decide arbitrability.

In fact, the majority's conclusion that Sharon Hill received proper notice and a fair hearing takes the steam out of Sharon Hill's argument on appeal. Because Sharon Hill knew that the primary issue to be decided by the arbitrator was whether Sharon Hill was the alter ego of Zcon, Sharon Hill could have simply not showed up at the arbitration hearing if Sharon Hill really wanted to challenge the arbitrator's jurisdiction. At that point, the union would have had two options: go forward with the arbitration hearing only against Zcon or seek an order from the courts compelling arbitration. *See George Day,* 722 F.2d at 1476. Because Sharon Hill, through Keating, appeared at the arbitration hearing and voluntarily submitted the alter ego question to the arbitrator, Sharon Hill cannot now challenge the authority of the arbitrator because it disagrees with his decision. *Id.* at 1475.

### III

Because Sharon Hill, through Keating, voluntarily submitted the alter ego question to the arbitrator, Sharon Hill is now bound by the arbitrator's decision, which is subject to extremely limited review by the courts. As we stated in *George Day,* we "are not at liberty to substitute our own view in place of the arbitrator's regardless what our view might be of the correctness of the arbitral decision." *Id.* (citing *W.R. Grace & Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum, and Plastic Workers of America,* 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)). Rather, we must confirm an arbitrator's award, "if on its face, the award represents a plausible interpretation of the collective bargaining agreement." *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, Intern. Ass'n of Machinists and Aerospace Workers,* 886 F.2d 1200, 1209 (9th Cir.1989) (en banc) (quoting *Arizona Mechanical,* 863 F.2d at 653), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

There is no question that the arbitrator's award in this case represents a plausible interpretation of the collective bargaining agreement. The union alleged, and the arbitrator found, that Sharon Hill was the alter ego of Zcon, the employer that signed the collective bargaining agreement. Apparently, Zcon was trying to evade its responsibilities under the collective bargaining agreement by hiding behind Sharon Hill. Both companies operated out of the same address and had the same responsible managing officer and agent for service of process. Sharon Hill was hiring nonunion workers and paying nonunion wages for work that was supposed to be performed by union workers and paid for by Zcon at union wages. To stop what is commonly known as a "double-breasting" operation, the arbitrator ordered both Zcon and Sharon Hill to turn over their books to the union. Such a remedy is supported by the collective bargaining agreement, which provides that the agreement is "binding upon *all* persons, firms, or corporations under any name or style of doing business in the construction industry, that, at the time of the execution of this Agreement are, or during the term hereof, become members of the Employer, in the area covered by this agreement."

### IV

I have one final comment about the majority's opinion. By refusing to confirm the arbitration award in this case the majority sends a troubling message to employers. The majority tells employers that they can avoid their responsibilities under a collective bargaining agreement by engaging in "double-breasting" operations. The majority also tells employers engaged in "double-breasting" operations that if they voluntarily submit a dispute to arbitration without reserving the arbitrability question for the courts they can still challenge the arbitrator's award simply by arguing that they never intended to submit the arbitrability question to the arbitrator. Such a result weakens the power of arbitrators in resolving labor disputes and undermines "federal labor policy [which] strongly favors the resolution of labor disputes through arbitration." *United Food & Commercial Workers Intern. Union, Local 588 v. Foster Poultry Farms,* 74 F.3d 169,

420

173 (9th Cir.1995), *as amended on denial of rehearing* (1996). Courts cannot go down this path, for as we recognized in our en banc *Stead Motors* decision: "Arbitration is a central feature of the collective bargaining process, designed to function alongside the labor contract in maintaining equity and balance of power in the workplace." 886 F.2d at 1205.

For all the reasons set forth above, I dissent.