116 F.3d 436
 155 L.R.R.M. (BNA) 2648, 134 Lab.Cas. P 10,030,
97 Cal. Daily Op. Serv. 4949,
97 Daily Journal D.A.R. 8064
 PACESETTER CONSTRUCTION COMPANY, INC.,
Plaintiff-Cross-claimant-Appellant,
v.
CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD,
Defendant-Counter-claimant-Appellee.
 No. 93-16627.
 United States Court of Appeals,
Ninth Circuit.
 June 25, 1997.
 
 Patrick M. Glenn, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, CA, for plaintiff-cross-claimant-appellant.
 Sandra R. Benson, James J. Wesser, VanBourg, Weinberg, Roger & Rosenfeld, Oakland, CA, for defendant-counter-claimant-appellee.
 On Remand from the United States Supreme Court.
 Before: GOODWIN, CANBY and T.G. NELSON, Circuit Judges.
 CANBY, Circuit Judge.
 
 
 1
 In its current posture, this case presents the question whether an arbitration panel (the Board of Adjustment) had jurisdiction to determine the arbitrability of a dispute between Pacesetter Construction Co., Inc. ("Pacesetter") and the Carpenters 46 Northern California Counties Conference Board ("Union"). Pacesetter had signed prehire agreements with the Union in 1971 and 1974, at which times it operated as a union contractor. It contends that in 1975 and 1979, it repudiated its prehire agreement and thereafter operated as a nonunion shop. This case arose when the Union filed a grievance in 1991, which the Board of Adjustment upheld. The district court subsequently confirmed the award and Pacesetter appealed. We affirmed the district court's decision in an unpublished memorandum disposition. Pacesetter Constr. Co. v. Carpenters 46 No. Cal. Counties Conf. Bd., No. 93-16627, 1995 WL 128172 (9th Cir. Mar. 22, 1995).[1] We held that Pacesetter knowingly and voluntarily submitted to the Board of Adjustment the question whether it had repudiated its Master Agreement with the Union, and thus had consented to have the Board arbitrate that issue. The Supreme Court, however, vacated our decision in a brief order and remanded the matter to us for reconsideration in light of the Court's recent decision in First Options of Chicago, Inc. v. Kaplan, 513 U.S. 1040, 115 S.Ct. 634, 130 L.Ed.2d 539 (1995). Pacesetter Constr. Co. v. Carpenters 46 No. Cal. Counties Conf. Bd., --- U.S. ----, 116 S.Ct. 43, 133 L.Ed.2d 10 (1995). Upon reconsideration, we conclude that First Options does not change the outcome we reached previously, and we reaffirm our earlier decision.
 
 BACKGROUND
 
 2
 The grievance that led to the award now being litigated was not the first one filed by the Union. In 1980, the Union filed a grievance against Pacesetter asserting that, because it was operating as a non-union contractor, Pacesetter was violating Sections 1 through 51 of the 46 Northern Counties Master Agreement. The Union's grievance was brought before the Board of Adjustment, Arbitrator Koven presiding, in 1981. Pacesetter appeared at the Board of Adjustment hearing, admitted that it was operating as a non-union contractor, and asserted that it was no longer bound by or party to an agreement with the Union. Arbitrator Koven issued a Decision and Award which stated in its entirety: "Having heard all the evidence provided by both sides, and after careful consideration of the matter, the grievance is denied."
 
 
 3
 During the ten years that followed Koven's decision, Pacesetter continued to act as a non-union contractor. In 1991, the Union filed a second grievance against Pacesetter, making allegations similar to those it had submitted to the Board in 1981, although referring to a later period and different locations. Pacesetter appeared before the Board. As it did in 1981, Pacesetter admitted that it was not abiding by the Agreement, but again asserted that it was not bound by or a party to the Agreement. Pacesetter also argued vigorously that the Board was bound by its prior determination that no contract existed between Pacesetter and the Union, and was required to apply that ruling to the 1991 grievance. The Board disagreed and, as we have related, issued a Decision and Award in 1992 upholding the Union's grievance.
 
 
 4
 The Union subsequently sought judicial confirmation of the Board's Award. Pacesetter cross-claimed for a declaration that it was not bound by the Agreement, and petitioned the district court to vacate the 1992 Decision and Award. The district court held that, because Pacesetter did not first present "the repudiation issue to the court without submitting to arbitration," it had consented to the jurisdiction of the arbitration panel to determine the issue of arbitrability. The district court also held that, under previous decisions of this court, Pacesetter could not "relitigate" the arbitrability issue.
 
 
 5
 Pacesetter appealed to this court. We affirmed the district court's decision, holding, inter alia, that: the Board did not fail to draw its 1992 decision from the essence of the Agreement when it concluded that, notwithstanding the 1981 decision, Pacesetter had not repudiated its Agreement with the Union; Pacesetter knowingly and voluntarily submitted the issue of repudiation to the Board in 1992, and thus consented to have the Board arbitrate that issue; and the Board had accepted jurisdiction over the repudiation issue. Pacesetter Const. Co., Inc. v. Carpenters 46 No. Cal. Counties Conf. Bd., No. 93-16627, at 2-4, 1995 WL 128172 (9th Cir. Mar. 22, 1995).
 
 
 6
 Pacesetter then filed the petition for certiorari that resulted in the Supreme Court's vacating our decision and remanding the case to us for reconsideration of our decision in light of First Options.
 
 ANALYSIS
 
 7
 First Options involved a dispute between investors and First Options, a company that cleared their trades on the stock exchange. The investors were the Kaplans and Mr. Kaplan's wholly-owned investment corporation. Only the corporation had signed an arbitration agreement. When First Options submitted the entire dispute to arbitration, the Kaplans appeared individually before the arbitration panel and objected to its jurisdiction, contending that their dispute was not arbitrable. First Options argued that the Kaplans had implicitly consented to the jurisdiction of the arbitration panel by arguing the issue of arbitrability to it.
 
 
 8
 The Supreme Court rejected First Options' argument, stating that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." First Options, 514 U.S. at 944, 115 S.Ct. at 1924 (quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). The Kaplans did not so consent, held the Court:
 
 
 9
 [M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as the Kaplans were forcefully objecting to the arbitrators deciding their dispute with First Options, one naturally would think that they did not want the arbitrators to have binding authority over them.
 
 
 10
 Id. 514 U.S. at ----, 115 S.Ct. at 1925. Moreover, the Kaplans' appearance before the arbitration panel could be explained by the need to represent Mr. Kaplan's wholly-owned subsidiary, which had agreed to arbitrate. Id.
 
 
 11
 The Supreme Court also rejected the argument of First Options that there was a presumption in favor of a party's agreement to be bound by arbitration.
 
 
 12
 [T]here is no strong arbitration-related policy favoring First Options in respect to [that] particular argument here. After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, ... but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms.
 
 
 13
 Id. (internal quotations and citations omitted).
 
 
 14
 Pacesetter would now have us simply apply First Options and direct summary judgment in its favor. It argues that First Options invalidates our earlier ruling that "[b]ecause Pacesetter submitted the repudiation [issue] to the Board without objecting to the Board's jurisdiction over the issue, it implied its consent to the Board's deciding whether it repudiated the Agreement."
 
 
 15
 We reject Pacesetter's argument. Our court has recently held that it is not appropriate to transfer wholesale the rationale of First Options to the collective bargaining context. United Brotherhood of Carpenters and Joiners of America, Local No. 1780 v. Desert Palace, Inc., 94 F.3d 1308, 1311-12 (9th Cir.1996). In Desert Palace, we held that a common "broad arbitration clause" providing for arbitration of "all disputes 'regarding the interpretation or application' " of a collective bargaining agreement represented an agreement to permit the arbitrator to decide arbitrability. Id. at 1310. We rejected the argument that First Options required a contrary result. There were cogent reasons, we said, why the principles of First Options did not apply in the context of a labor dispute. First, we noted that collective bargaining agreements involve fundamentally different policy concerns from those applicable to commercial contracts, and these distinctions heavily favor arbitration in the labor context:
 
 
 16
 Unlike the commercial contract, which is designed to be a comprehensive distillation of the parties' bargain, the collective bargaining agreement is a skeletal, interstitial document.... The labor arbitrator is the person the parties designate to fill in the gaps; for the vast array of circumstances they have not considered or reduced to writing, the arbitrator will state the parties' bargain. He is "the parties' officially designated 'reader' of the contract ... their joint alter ego for the purpose of striking whatever supplementary bargain is necessary" to handle matters omitted from the agreement.
 
 
 17
 Desert Palace, 94 F.3d at 1311 (emphasis removed) (quoting Stead Motors v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1205 (9th Cir.1989) (en banc), cert. denied, 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990)).
 
 
 18
 We also pointed out that the Supreme Court's observation in First Options that "there is no strong arbitration-related policy" in the commercial-arbitration context does not apply in the collective-bargaining context, "where there is a strong federal policy favoring arbitration of labor disputes as embodied in the Labor Management Relations Act." Id. at 1312. We therefore concluded that "had the Supreme Court been presented with [the] question the Court would have adopted this circuit's view that a broad arbitration clause grants an arbitrator authority to decide his or her own jurisdiction." Id. at 1311.
 
 
 19
 Pacesetter does not contend that the arbitration clause in the Agreement with the Union is any less broad than that in Desert Palace. Pacesetter argues, however, that this fact is irrelevant because it is not a party to the Agreement and its arbitration clause.
 
 
 20
 Pacesetter was a party to the Agreement, however. The only question is whether it effectively had repudiated it. Once the Agreement was in effect, all of Desert Palace's policy reasons for arbitrating disputes between the parties to labor disputes came into play, and applied as well to the contested issue of repudiation. Especially was this so when Pacesetter argued the issue of repudiation to the arbitrator. We held in George Day Constr. Co. v. United Brotherhood of Carpenters, 722 F.2d 1471, 1475 (9th Cir.1984), that an employer who arbitrated the issue of arbitrability under an expired collective bargaining contract, without reserving the question of arbitrability for initial decision by a court, consented to the jurisdiction of the arbitrator. Because of the policy considerations set forth in Desert Palace and discussed above, we conclude that George Day survives First Options and controls this case.
 
 
 21
 A second reason for rejecting Pacesetter's argument is that its posture before the Board of Adjustment leaves it in a poor position to argue that it never consented to the Board's deciding the issue of arbitrability. In disposing of Pacesetter's original appeal, we stated that Pacesetter consented to the Board's jurisdiction simply by arguing the issue of arbitrability to it without preserving its objection to jurisdiction. In so stating, we were relying on George Day, supra, and needed to say no more. In fact, however, Pacesetter did more than simply argue arbitrability. It repeatedly asserted that the Board's jurisdiction stemmed from its original jurisdiction over the 1981 grievance, and that the 1981 decision of the Board remained in effect and controlled the 1991 proceeding. Pacesetter's counsel engaged in the following colloquy with the arbitrator:
 
 
 22
 MR. SCHAEFER: [W]e're appearing here because we believe you already had jurisdiction of this '81 grievance. That's why we didn't say there's no jurisdiction, go to court, et cetera. There's been a previous decision, and we're saying that that was decided and it's final and it's binding on the panel. And it's binding on this local union.
 
 
 23
 [Arbitrator]: In effect what you're--can I characterize your motion that you've just made, the last one, as being a special appearance then at this point?
 
 
 24
 MR. SCHAEFER: Well, we're not certain a special appearance is proper because the panel already has jurisdiction over Pacesetter Construction by virtue of an arbitration that occurred under the very document that the union claims creates a contract, namely the '74 document, '74 me too agreement. And there's an arbitral award on that. So that if we appeared here, we can't specially appear now when that proceeding is res judicata on this panel and this union.
 
 
 25
 In light of this exchange, we cannot conclude that Pacesetter made clear (as the Kaplans did in First Options) that it did not want the arbitrator to exercise jurisdiction over its dispute.
 
 
 26
 Our conclusion that the Board of Adjustment had authority to decide the arbitrability of Pacesetter's dispute is not inconsistent with our recent decision in Carpenters 46 No. Cal. Counties Conf. Bd. v. Zcon Builders, 96 F.3d 410 (9th Cir.1996). In Zcon, an arbitrator had held that a corporation's dispute with a union was arbitrable because the corporation was the alter ego of an employer that had signed an arbitration agreement. We held that the corporation, which denied that it was a party to the collective bargaining agreement, was not bound by the arbitrator's decision of arbitrability. Id. at 414-16. Our decision, however, was based on the fact that the objecting corporation had never appeared at the arbitration, and consequently never evinced its intent to allow the arbitrator to decide arbitrability, within the meaning of George Day. Id. at 415-16. Pacesetter, in contrast, appeared before the arbitrator, contested arbitrability and the merits of the dispute, and made no reservation of its right to reserve the issue of arbitrability for initial determination by a court. George Day, and not Zcon, governs Pacesetter's case.
 
 CONCLUSION
 
 27
 First Options does not affect the result we reached in Pacesetter's original appeal. The judgment of the district court confirming the award of the Board of Adjustment in favor of the Union is therefore
 
 AFFIRMED.APPENDIX
 UNITED STATES COURT OF APPEALS
 FOR THE NINTH CIRCUIT
 
 28
 Pacesetter Construction Company, Inc.,
 
 
 29
 Plaintiff-Cross-claimant-Appellant,
 
 
 30
 v.
 
 
 31
 Carpenters 46 Northern California Counties Conference Board,
 
 
 32
 Defendant-Counter-claimant-Appellee.
 
 
 33
 No. 93-16627.
 
 
 34
 Argued and Submitted March 13, 1995.
 
 
 35
 Appeal from the United States District Court for the
 
 
 36
 Northern District of California; Samuel Conti,
 
 
 37
 District Judge, Presiding. D.C. No.
 
 
 38
 CV-92-02113-SC.
 
 
 39
 Before: GOODWIN, CANBY and T.G. NELSON, Circuit Judges
 
 MEMORANDUM
 I.
 
 40
 Pacesetter Construction Company, Inc., appeals the district court's confirmation of the Carpenters Board of Adjustment's Decision and Award in favor of Carpenters Local Union No. 316. We affirm the district court's confirmation of the Decision and Award.
 
 II.
 
 41
 It was appropriate for the Board to decide whether the 1981 Decision precluded it from finding that Pacesetter was bound by the Carpenters 46 Northern California Master Agreement ("Agreement"). Local Union No. 370 v. Morrison-Knudsen Co., 786 F.2d 1356, 1358 (9th Cir.1986). As long as the Board's 1992 Decision and Award drew its essence from the Agreement, the district court was constrained to enforce it even if the Board erred in its factual determination of what the 1981 Decision necessarily decided. Phoenix Newspapers Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1080 (9th Cir.1993) (under most circumstances, a reviewing court is bound to defer to the arbitrator's decision even if the arbitrator finds facts erroneously). Pacesetter has not set forth specific facts showing that the Board's determination concerning the 1981 Decision created a genuine issue as to whether the 1992 Decision and Award draws its essence from the Agreement. The district court therefore was not required to reject the 1992 Decision because of the 1981 Decision.
 
 III.
 
 42
 Pacesetter has presented no evidence that Carpenters committed fraud when it represented that it could not divine the meaning of the 1981 Decision. It also has presented no evidence that Arbitrator Koven must have based his decision on repudiation. Therefore, we will not reverse the district court's confirmation of the Decision and Award on the ground that it was procured through fraud.
 
 IV.
 
 43
 Pacesetter knowingly and voluntarily submitted the issue of repudiation to the Board in 1992. After the Board announced that it would consider on the merits whether Pacesetter was bound by the Agreement, thereby notifying Pacesetter that the 1992 proceeding was not a continuation of the 1981 proceeding, Pacesetter submitted the repudiation issue to the Board. Pacesetter did not preserve the question of whether the Board had jurisdiction over the repudiation issue by objecting to the Board's authority to decide the repudiation issue. Cf. Van Waters & Rogers, Inc. v. International Brotherhood of Teamsters, 913 F.2d 736, 740 (9th Cir.1990) (describing ways in which party to arbitration can preserve an issue for judicial determination). Because Pacesetter submitted the repudiation to the Board without objecting to the Board's jurisdiction over the issue, it implied its consent to have the Board decide whether it repudiated the Agreement. George Day Const. Co. v. United Brotherhood of Carpenters & Joiners, 722 F.2d 1471 (9th Cir.1984).V.
 
 
 44
 We also agree with the district court's determination that the Board accepted jurisdiction over the repudiation issue. In its Decision, the Board indicated that it would accept jurisdiction over the case, including the issue of whether Pacesetter had repudiated the Agreement, because there was no timely letter of termination. The Board then rejected Pacesetter's repudiation argument on the ground that Pacesetter had not presented evidence of a letter of repudiation on behalf of Pacesetter. The Board mentioned Deklewa standards, but it did not suggest that its reason for rejecting Pacesetter's repudiation argument was the Pacesetter had acted unilaterally. Therefore, the Board did not act in manifest disregard for the law in rejecting Pacesetter's argument that it had repudiated the Agreement.
 
 VI.
 
 45
 Finally, we hold that Carpenters is entitled to attorneys' fees under the terms of the Agreement.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 We have attached our memorandum disposition as an appendix to this opinion, after removing the restrictions against citation